Drake v. Railroad.

BESSIE DRAKE *v.* NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COMPANY *et al.*

(*Nashville.*    December Term, 1911.)

1. **COMMON CARRIERS.   First connecting carrier owes a contract duty to shipper not to divert shipment from route, when.**
Where the first connecting carrier received a car load of freight, under the initial carrier's contract for transportation over several specific lines, procured by the solicitation of such first connecting carrier's traveling freight agent and shipped in its car, such connecting carrier owed a contract duty to the shipper not to divert the car to another line without his consent. (*Post, pp.* 633-635, 637.)  ·

2. **SAME.   Initial carrier participating in first connecting carrier's unauthorized diversion is equally liable with it for loss of freight.**
Where a car load of fruit trees was routed over several connecting lines under a contract of shipment, and there was a diversion by the second carrier owing a contract duty to the shipper not to divert the car, the initial carrier participating in such diversion, as well as such second carrier, is liable, to the shipper for the loss of the freight.   (*Post, pp.* 635-637.)

Cases cited and approved:   Railroad v. Campbell, 7 Heisk., 261; Railroad v. Odil, 96 Tenn., 63.

3. **SAME.   Railroad as third party receiving freight under unauthorized diversion thereof, without sufficient shipping instructions, is liable for loss, when.**
Where a car load of fruit trees was routed over specified railroad lines under a contract of shipment, another railroad not specified in the routing, which received the shipment under an unauthorized diversion thereof by the second carrier, is liable to the shipper for a loss following the diversion, where it received the car without sufficient shipping instructions, though

Drake v. Railroad.

it had no knowledge of the shipper and no knowledge of the terms of the bill of lading under which the shipment was made. (*Post, pp.* 638, 639, 645.)

4. SAME. Carrier is not bound to receive freight from any except owner, or his agent; liability for receiving without knowledge or instructions.

A common carrier is not bound to accept for transportation goods from any person other than the owner, or his duly authorized agent; and it is negligence, on its part, for a carrier to receive freight from another carrier, without knowledge of its shipping contract and its authority to offer the freight for transportation. (*Post, pp.* 639, 640.)

5. SAME. Initial carrier under contract of interstate shipment is liable for full loss by negligence of a connecting carrier, notwithstanding contractual limitation against liability exceeding a stipulated sum.

Under the act of congress of February the 4, 1887, ch. 104, sec. 20, 24 Stat., 379, as amended by the Carmack amendment of June the 29, 1906, ch. 3591, 34 Stat., 584, 595, making the initial carrier of an interstate shipment liable for any negligence of the connecting carrier, etc., the initial carrier, under a contract for shipment of a car load of fruit trees, over specified railroad lines, to a point in another State, is liable to the shipper for the entire loss of the freight following an unauthorized diversion of the shipment from the specific route by the second carrier, though the contract purported and undertook to limit its liability to an inadequate agreed valuation. (*Post, pp.* 630-633, 640-643.)

Cases cited and approved: Railroad v. Gilbert, 88 Tenn., 430; Railroad v. Sowell, 90 Tenn., 17; Deming v. Cotton Press Co., 90 Tenn., 327; Railroad v. Stone, 112 Tenn., 348; Railroad v. Smith, 123 Tenn., 678; Railroad v. Mills, 219 U. S., 186.

6. SAME. If second specified carrier refuses to forward freight, initial carrier shall ask for instructions, and, if not given, return the freight.

Drake v. Railroad.

Where the second carrier, under a contract of shipment over several specified lines, refuses to carry the freight over its specified line, it is the initial carrier's duty to receive the freight back into its possession, and to call upon the shipper for further instructions, in the absence of which, the freight should be returned. (*Post, p.* 643.)

7. SAME. Notice of claim for loss known to the carrier is wholly unreasonable and unnecessary, though stipulated for.

A shipper of a car load of fruit trees is not precluded from re- covering for a loss of the freight following a diversion from the route specified by the contract of shipment by his failure to make a written claim to the carrier's agent at the point of destination within thirty days after the arrival of the shipment, as required by the contract, where the shipment was wholly valueless when it reached its destination, and was burned in the station yards, with the knowledge of the agent of the last carrier; for such notice would be wholly unreasonable. (*Post, pp.* 643-645.)

8. SAME. Joint and several liability of the first two carriers diverting a shipment and of a third carrier receiving the diverted shipment, without sufficient shipping instructions.

Where a shipment of fruit trees was, under a contract of through shipment, routed over specified connecting lines, and was, without authority, diverted by the first two carriers to a line not included in the contract, and that line received the shipment, without sufficient shipping instructions, the three carriers are jointly and severally liable for a loss of the shipment following the diversion. (*Post, pp.* 630-633, 645.)

FROM FRANKLIN.

Appeal from the Chancery Court of Franklin County. —T. M. McConnell, Chancellor.

ESTILL & LITTLETON and ARTHUR CROWNOVER, for complainant.

GEO. E. BANKS and J. W. BONNER, for defendant Illinois Central Railroad Co.

WRIGHT & WRIGHT, for defendant Chicago, Rock Island & Pacific Railway Co.

LYNCH & PHILLIPS and CLAUDE WALLER, for defendant Nashville, Chattanooga & St. Louis Railway Co.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

Miss Drake filed her original bill against the railroad company above named, which the bill avers was incorporated under the laws of the State of Tennessee, and also against the Chicago, Rock Island & Pacific Railway Company and the Illinois Central Railroad Company, each of which, the bill avers, is a corporation under the laws of the State of Illinois.

The bill is predicated upon the total loss of a car load of fruit trees valued at $1,125, owned by complainant and shipped by her from Winchester, Tennessee, under a bill of lading which named Toppenish, in the State of Washington, as the ultimate point of the shipment.

Of the three defendants, the Tennessee corporation was the initial carrier, and issued the bill of lading.

Drake v. Railroad.

The Chicago, Rock Island & Pacific Railway Company was the common carrier to which, under the terms of the bill of lading, the car was to be delivered at Memphis, Tennessee, by the initial carrier, and under the terms of the bill of lading, the Chicago, Rock Island & Pacific Railway Company was to carry the car over its line to El Paso, Texas, and there deliver it to the Southern Pacific Railroad Company, by which company it was to be carried to Portland, Oregon, and there to be delivered to the Northern Pacific, and thence to be carried by that company to its destination at Topenish, in the State of Washington.

The car in which the fruit trees were shipped was owned by the Chicago, Rock Island & Pacific Railway Company, and upon its arrival at Memphis, Tennessee, this car was delivered by the initial carrier to the Chicago, Rock Island & Pacific Railway Company; but that company, after having the car in its possession, refused to carry it over its line as routed in the bill of lading, and, acting in conjunction with the initial carrier, delivered the car at Memphis, Tennessee, to the defendant the Illinois Central Railroad Company, without any further instructions to the latter company than that the car was by the latter company to be transported to the terminus of its line in the city of New Orleans, in the State of Louisiana. The Illinois Central Railroad Company received the car from its codefendants, without instructions from either of them, and without instructions from the shipper, and transported it to the terminus of its line at New Orleans, and there placed upon the car

a card marked "Hold," and thereafter made delivery of the car at New Orleans to the Southern Pacific Railroad Company.

The act of diverting of the shipment the bill makes the basis of the liability of each of the defendants. Her loss is alleged to have been caused by that act.

Defendants answered, and, on final hearing, decree was rendered in favor of complainant against the initial carrier for $754.80, and against each of the other defendants separately for the sum of $1,404.08. As against each of the defendants, except the initial carrier, the decree found the value of the property lost, together with interest thereon, to amount to the sum above stated, for which decree was rendered against each of them; but, as against the initial carrier, it was decreed that it was not liable for the full value of the property lost, as shown by the proof, for the reason that complainant, by her contract, embodied in the bill of lading, agreed that the property should be valued, in case of loss or damage, at three dollars per hundredweight, so that the recovery of the complainant against the initial carrier was based upon the weight of the cargo as shown by the bill of lading, multiplied by the agreed valuation per hundredweight.

From all of this decree each of the defendants prayed an appeal, which was granted, and the complainant has filed the record in this cause for writ of error in this court, on account of the failure of the decree to allow her the full value of her property lost, as against the initial carrier. The complainant has assigned the fore-

going as the only error in the decree.   The defendants
have each assigned errors.

Why the Chicago, Rock Island & Pacific Railway
Company refused to carry the shipment as routed by the
bill of lading, after the shipment had been solicited by
one of its traveling agents, and after assurance by the
shipper of her willingness to pay any increased freight
made necessary by that routing; why the initial carrier
and the Chicago, Rock Island & Pacific Railway Com-
pany, co-operating, diverted the shipment from the rout-
ing for which the car had been prepared, with full knowl-
edge that the shipment was perishable, and without the
consent of the shipper, and without advising her of their
purpose; why they did not give to the Illinois Central
Railroad Company full shipping directions, so that the
car would proceed without delay; why the Illinois Cen-
tral Railroad Company accepted the car without full
shipping directions, and why, having so accepted it,
such directions were not promptly secured by it; and
when, if at all, it ever secured such directions; and when,
if at all, it ever countermanded its order to the Southern
Pacific Railroad Company to "hold" the car; and when
the car left New Orleans over the Southern Pacific, are
questions unanswered in this record.

On each of the outsides of the car in which the ship-
ment was contained were cardboards on which in large
letters were printed the words, "Fast Freight; Perish-
able; No Delay; Hurry," and also on each side of the
car were the hurry tags, which the Nashville, Chatta-

nooga & St. Louis Railway Company, according to the proof, attaches to perishable shipments.

From the facts proven, we think that the proximate cause of complainant's loss was the joint and concurrent act of each of the defendant corporations in diverting the shipment from the routing agreed on by the bill of lading, without her consent or knowledge, and the joint negligence of each and all of them in their failure to see that the Illinois Central Railroad Company had sufficiently definite instructions for the forwarding of the shipment to its destination, with reasonable promptness, and their joint negligence in failing to furnish to the Southern Pacific Railroad Company, with reasonable promptness, sufficient shipping instructions to enable it to forward the shipment to its destination. Their separate participation in the act of diversion was necessary to its accomplishment. By the active agency of each of them it was accomplished. The initial carrier and the Chicago, Rock Island & Pacific Railway Company, we think, at the time of diverting this shipment each stood in the relation of party to the contract of shipment. The initial carrier issued it, and in it named the Chicago, Rock Island & Pacific Railway Company as the second in the line of carriers who were to handle the shipment. At the time the shipment was diverted, it was in the hands of the second carrier at the solicitation of its traveling freight agent. The act of this agent the second carrier does not dispute, nor does it dispute his agency by any proof; therefore we think, by its receipt of the car into its possession and the other facts

Drake v. Railroad.

mentioned, it owed a contract duty to the complainant not to divert the shipment without her consent.

The legal status of the first and second carrier toward the complainant, the shipper, being thus fixed, what were the respective rights and duties of the parties to each other? Our own cases answer the question thus:

"It is insisted in the assignment of errors that, under the facts in this case, an emergency had arisen which justified a deviation in route, inasmuch as the one chosen by the shipper was closed by a strike, and the other, equally good, was open. There is no doubt that when, in case of an unforseen necessity, the safety of the shipment demands it, a deviation from the route agreed upon with the shipper may be made, and will be justifiable, as, for instance, forwarding perishable freight by rail, when a storm prevents a boat from proceeding upon its voyage. But where the goods can be properly cared for and held until the shipper can be communicated with, the carrier will not be justified in selecting another route, without notice to and instructions from him. Ray on Freight Carriers, sec. 18; Hutchinson on Carriers, sec 14. See, also, *Railroad* v. *Campbell*, 7 Heisk., 261. Unless justified by urgent circumstances, a deviation by the carrier will render it responsible for losses resulting, even from inevitable casualties, and the original carrier becomes, in effect, an insurer for the line he selects. Ray on Freight Carriers, sec. 79; Hutchinson on Carriers, sec. 314." *Railroad* v. *Odil*, 96 Tenn. (12 Pick.), 63, 33 S. W., 611.

When the second carrier named in the bill of lading refused to transport the shipment as routed by that contract, it was the duty of the initial carrier to advise the shipper of the fact; and, in case she refused to give further shipping instructions, it was the right of the initial carrier to return the shipment to her at her expense, and thus, being wholly without fault, it could have avoided all liability to her. No emergency existed which justified the initial carrier in diverting the shipment from its routing without the shipper's consent; therefore when the initial carrier diverted the shipment it became liable to the shipper as an insurer of the safety of the goods, because, having assumed, without her consent, to select a different agency from that which she had selected for the transportation of her goods, the agency which is so selected became its agency, and not hers, and it was responsible to her in law for the acts of its agent.

The second carrier is on this record wholly without excuse or justification for refusing and failing to transport the shipment over its line, as the same was routed. By way of defense, it sets up in its answer that the rates did not apply by the route selected; but there is no proof that such was the fact, and, if such was the fact, no reason is shown why it should not have accepted shipper's offer to be responsible for and pay additional freight necessitated by the route selected.

"The carrier cannot violate a contract, and at the same time claim the benefit of such contract; and, whether it is the initial carrier, or an intermediate carrier, it may become liable for the loss of the goods, or

injury thereto by its succeeding carrier, where in the absence of an emergency, and without any necessity, it has deviated from the route prescribed by its contract or instructions, and forwarded the goods over another route or in another manner." 4 Elliott on Railroads (2 Ed.), sec. 1449a, p. 108.

See, also, the authorities cited in note 51 to sustain the above text.

In the same section, Mr. Elliott observes further:

"But to render the intermediate carrier liable for deviation, or to affect its rights in such a case, it must, as a general rule at least, have notice that a particular route is specified, or of the limitations in the authority of the prior carrier."

The intermediate or second carrier in the present case in its answer in substance denies that it had notice of the particular route specified, or of the limitations in the authority of the prior carrier; but it makes no proof to sustain its answer in this respect, and we think it is clear from the proof in this record that it did have such notice, and it is equally clear from the authorities already cited that, by its co-operation in diverting the shipment to the Illinois Central Railroad Company, that company became the agent of the second carrier, and the second carrier became liable in law to the shipper as an insurer of the goods, because of its liability for the act of the agency, which, without the consent of the shipper, it had selected as an agency for the transportation of her goods.

The Illinois Central Railroad Company, by way of defense in its answer, set up in substance that at the time it received and undertook the transportation of complainant's goods from Memphis, Tennessee, to New Orleans, and delivery at that point to the Southern Pacific Railroad Company, it did not know who the shipper was, and it had no knowledge of the limitations of the powers of the two common carriers from which it received the shipment, and no knowledge of the terms of the bill of lading, under which the initial carrier received the shipment from complainant, and consequently that it is not liable under the theory of complainant's bill as a joint actor with the other two common carriers for diverting complainant's goods from the routing specified in the bill of lading.

Each of the witnesses introduced by it did testify that they had no such knowledge; but, assuming that the Illinois Central Railroad Company had no such knowledge, when it received the shipment, nevertheless we think it is clear from this record that its acts of negligence in receiving the goods from its codefendant without sufficient shipping instructions, and its instructions to the Southern Pacific Railroad Company at New Orleans to "hold" the car, coupled with its failure to show by any proof when it countermanded the order to "hold" the car, justify the inference, in the absence of any proof to the contrary, that the delay in the arrival of the shipment at its ultimate destination within a reasonable time was the direct result of the negligence of the Illinois Central Railroad Company, and that for

this reason it is liable in law to complainant for the loss sustained by her by reason of its negligence. It was not one of the carriers named in the bill of lading, and therefore it cannot successfully assert, by way of defense, as against complainant, any limitation by express contract with her of its common law liability as a common carrier, arising out of its act of receiving and undertaking to transort her goods.

It is true that the bill of complaint bases its liability on the ground that it participated in the violation of the routing agreement. It is equally true that its liability flows directly from, and as a consequence of, its violation of that agreement. It was negligence on its part not to know of that agreement before it received the goods. It was within its legal right to insist upon a showing from its codefendants of their authority to offer the goods to it for transportation. A common carrier is not bound to accept for transportation goods from any person other than the owner, or the duly authorized agent of the owner. 1 Hutchinson on Carriers (3d Ed.), sec. 148.

Therefore, the ignorance resulting from its negligence cannot avail this defendant. Upon acceptance of the goods for transportation, although wholly ignorant of who the owner was, it became liable as an insurer of the safe delivery of the goods at the point of ultimate destination; its liability being limited only in case the loss of the goods should result from some one or more of the causes which the common law, for its benefit and pro-

tection, interposes between it and absolute liability. 1 Hutchinson on Carriers (3d Ed.), sec. 265.

The proof fails to show that the loss of the value of the goods, which is so accepted, resulted from any of the causes which the common law interposes between this defendant and absolute liability as an insurer of the goods.

On the contrary, we think the proof, together with all of the just and legal inferences deducible therefrom, clearly establishes that the loss was the result of the negligence of this defendant and its codefendants.

Reverting, now, to the assignment of error made by complainant, and based on the failure of the decree to award her full damages against the initial carrier, we think this question is fully determined in favor of complainant by the decision of the supreme court of the United States in *Atlantic Coast Line R. R. Co.* v. *Riverside Mills,* reported in 219 U. S., 186, 31 Sup. Ct., 164, 55 L. Ed., 185, 31 L. R. A. (N. S.), 7, opinion by Mr. Justice Lurton, in which case the opinion of the court was based upon its construction of the provisions of the act of congress regulating commerce between the States, known as the Carmack amendment of June 29, 1906 (Act June 29, 1906, ch. 3591, 34 Stat., 584, 595 [U. S. Comp. St. Supp., 1909, pp. 1149-1166]). The twentieth section of the act of February 4, 1887 (24 Stat., 379, ch. 104 [U. S. Comp. St., 1901, p. 3154]), as changed by the Carmack amendment, read as follows:

"That any common carrier, railroad, or transportation company, receiving property for transportation from a point in one State to a point in another State, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it, or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading, shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury, shall have been sustained, the amount of such loss, damage or injury as it may be required to pay to the owner of such property as may be extended by any receipt, judgment or transcript thereof."

In the course of the above opinion, construing the Carmack amendment, the court said:

"The shipments involved in the present case were voluntarily received by an initial carrier, who undertook to escape carrier's liability beyond its own line by a provision limiting liability to loss upon its own line.

Drake v. Railroad.

This was forbidden by the Carmack amendment, and any stipulation and condition in the special receipt which contravenes the rule in question is invalid. Reduced to the final result, the congress has said that a receiving carrier, in spite of any stipulation to the contrary, shall be deemed, when it receives property in one state to be transported to a point in another, involving the use of a connecting carrier for some port of the way, to have adopted such other carrier as its agent, and to incur carrier's liability throughout the entire route, without right to reimbursement for the loss not due to his own negligence."

And further in its opinion the court in the above case said:

"It is therefore not the case of making one pay the debt of another. The receiving carrier is, as principal, liable not only for its own negligence, but for that of any agency it may use, although as between themselves the company actually causing the loss may be primarily liable."

We think the case last discussed establishes the proposition that the initial carrier in the present case is liable for the full amount of the loss sustained by complainant, notwithstanding the stipulation in the contract that the carrier assumes liability only to the extent of the agreed valuation of three cents per pound. Moreover, this stipulation in the contract, under the facts of the present case, would amount to no protection to the initial carrier under the holdings of this court in *Railroad* v. *Gilbert,* 88 Tenn., 430, 12 S. W., 1018; *Railroad* v. *Sowell,*

90 Tenn., 17, 15 S. W., 837; *Deming* v. *Cotton Press Co.*, 90 Tenn., 327, 17 S. W., 89, 13 L. R. A., 518; *Railroad* v. *Stone*, 112 Tenn., 348, 79 S. W., 1031; *Railroad* v. *Smith*, 123 Tenn., 678, 134 S. W., 866.

What we have said disposes of all of the defenses set up by the initial carrier. Its first defense, that it made delivery to the connecting carrier, and never received the property into its possession again from the connecting carrier, is met by the answer that it was its duty to receive the property back into its possession, and to call upon the shipper for further instructions, and, in the event of default or refusal of the shipper to give such instructions, it was its right to return the property to the shipper.

The second defense, that an emergency arose which authorized it to divert the shipment, is inconsistent with its first defense. Its second defense is in substance that it did not divert the shipment. But, passing this, our conclusion is that no such emergency had arisen as justified it in diverting the shipment.

Its third defense, that it is not liable because the loss or damage did not occur on its portion of the route, cannot be sustained, because the shipment was an interstate one, and it falls within the operation and effect of the Carmack amendment.

Its fourth defense, that claims for loss and damage must be made in writing to the agent at the point of destination promptly after the arrival of the property, and that delay to make such claim for more than thirty days after delivery of the property, or after due time

for delivery thereof, relieved it from liability, cannot be sustained, because under the proof in this case the property was wholly valueless when it reached its destination, and was burned in the station yards and within the knowledge of the agent of the last carrier, by whom proof of this fact appears in the record.

To require the shipper to give notice of the loss or damage of the property shipped at the point of destination, when the record shows that the agent had knowledge of such fact immediately upon the arrival of the property, would be wholly unreasonable, and the clause of the·contract in this case making such requirement has no effect upon the complainant's right of recovery.

The fifth defense is based on the agreed valuation clause of the contract, and the limitation of liability thereby attempted to be effected. This defense cannot be sustained, for reasons already set out.

The second carrier named in the bill of lading does not rely in its answer upon any of the stipulations of the contract of shipment, but denies that it was a party thereto, and bases its defense only upon its right as a common carrier to refuse to transport the shipment· as routed, and, further, upon its denial that it had any part in diverting the shipment from its routing. These defenses, as we have already shown, are not sustained by the proof. The defenses made by the Illinois Central Railroad Company are not consistent. It denies all knowledge of the routing contract, and yet claims the benefit of the limitations of the common-law liability indorsed upon the back of that contract; but, passing

Drake v. Railroad.

this inconsistency, the answer to each of its defenses is, in brief, that it was at its peril bound to know the limitations upon the powers of its codefendants when it received the shipment from them, and, second, that it was not one of the carriers named in the bill of lading, and cannot claim the benefit of any of the provisions thereof, looking to the limitation of the common-law liability of a common carrier.

We do not undertake to fix or determine in this opinion anything as to the liability of the defendants to this suit as between themselves; that question not being here involved.

The only question we determine is that each of the three corporate defendants are under joint and several liability to the complainant for the value of her preperty as fixed by the decree of the chancellor against the Chicago, Rock Island & Pacific Railway Company and its codefendant, the Illinois Central Railroad Company, and in so far as the chancellor's decree failed to award complainant a decree for the same amount against the initial carrier, the Nashville, Chattanooga & St. Louis Railway Company, the decree is modified, so as to award complainant a decree for the correct amount as above indicated.

Except as modified above, the decree of the chancellor is affirmed, with costs.