## Howard & Callahan v. Illinois Central Railroad Company.

(Decided December 18, 1914.)

### Appeal from Fulton Circuit Court.

Carriers—Validity of Contract That Shipper Must Present Written Claim for Damages Within Prescribed Time—Waiver.—A contract of carriage providing that a shipper who has a claim for damages for injuries sustained by the property in shipment, must present the same in writing to designated agents of the company within ten days after the delivery of the property at destination, is a valid and reasonable condition, but the written notice may be waived by the act, conduct or assurances of the agent to whom the written notice could be delivered.

HERSCHEL T. SMITH for appellants.

TRABUE, DOOLAN & COX, R. V. FLETCHER, CARR & CARR and THOMAS & WEBB for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellants, Howard and Callahan, shipped from Coulterville, Illinois, to Fulton, Kentucky, a carload of mules. These mules, in course of shipment, and at Mounds, Illinois, were left standing in open pens in a cold rain for several hours, and, by reason of the exposure, a number of them were seriously injured and damaged.

To recover compensation for the loss sustained by the injuries to the stock so occurring, they brought this suit.

For answer to the petition, the railroad company, after denying negligence in the carriage of the stock, set up that it was engaged as a common carrier in commerce between the States of Kentucky and Illinois, and other States, and that the stock was delivered to it for transportation and accepted by it in interstate commerce. That the parties at the point of shipment in the State of Illinois entered into a written contract for the shipment of the stock that contained, among other, these clauses:

"6.   It is further agreed by the shipper that no claim for loss or damage to stock shall be valid against the railroad company unless it shall be made in writing, verified by affidavit and delivered to the General Freight Agent, or Freight Claim Agent of the railroad company, or to the agent of the company at the station from which the stock is shipped, or to the agent of the company at the point of destination, within ten days from the time said stock is removed from said cars.

"7.   The rules and regulations printed at the head of this contract are an essential part of the said contract. No employe of the railroad company is authorized to change or waive the provisions of this contract."

It further pleaded "that prior to the delivering to it of said shipment of cattle for transportation it had published and filed with the Interstate Commerce Commission its schedule of tariffs and charges for the transportation of the mules from Coulterville and Carbondale, both in the State of Illinois, to Fulton, Kentucky, and, as a part of such tariffs, had filed official classifications No. 37, under which schedule and tariff classification it was provided that shipments of the character mentioned in the petition should be made subject to a limitation of liability as to the valuation, and as to the time

of presenting claim on account of such shipments as set forth in the contract herewith filed as exhibit.  *  *  *

"Defendant says that no claim for loss or damage to any of the stock embraced in any of said shipments was ever made or presented to it or to any of its officers or agents in writing or otherwise within ten days from the time the said stock embraced in said shipment was removed from the cars, and no such claim was ever presented to this defendant or to any of its officers or agents in writing, verified by affidavit,  *  *  *" And it pleaded and relied on these provisions of the contract and the failure of the plaintiffs to observe them. as a bar to the action.

For reply to this answer the plaintiffs, after a general denial of the averments of the petition, averred, in avoidance of the stipulation in the contract above quoted, that when the mules arrived at Fulton, the place of destination, they "were in bad condition, but, upon the promise of the defendant to pay them the damages sustained by reason of having unloaded and left standing in a cold rain the mules in Mounds, Illinois, plaintiffs accepted the mules immediately and paid the charges under protest, and they allege that when they paid the freight charges the defendant promised that it would make good any and all damages they had sustained and would pay the bill of the veterinary, and did, in fact, pay the same, and when it promised to pay the damages the mules had sustained, it wrote upon the receipted freight bill as follows: 'Shipment delivered January 16th, under protest; colds developing; throats swelling; flanks drawing, indicating serious conditions, account unloading in cold rain at Mounds, Illinois, January 11, 1913,' and they allege that, by reason of the promise to pay the damage the mules had sustained, and written acknowledgment of the condition of the mules, and the payment of the veterinary's bill, all of which occurred within less than ten days of the unloading of the mules, they were quieted in their fears and lulled to inaction in the belief that the defendant would pay the damages until more than ten days had elapsed, and they allege that, by reason of the action and conduct on the part of defendant, it has waived clause six relied on in its answer, and, after lulling them to sleep and inaction for more than a period of ten days after the stock was delivered by its act and conduct, it is now estopped to rely upon clause six in the contract requiring claims to be filed in writing within ten days

after delivery at destination, or at all. They further allege the defendant had all the information about the condition of the mules plaintiffs had, and a written statement of the damages would not have aided it in ascertaining the extent of the damage, nor would it have increased or diminished the damage to the shipment.''

The trial judge overruled a demurrer to this reply, and thereafter the case went to trial before a jury, whereupon, at the conclusion of the evidence for the plaintiffs, the lower court directed a verdict for the defendant upon the ground that, as clause six in the contract had not been complied with or waived, it presented a bar to any recovery by the plaintiffs.

Passing what occurred before the mules arrived at Fulton, the place of destination, as not necessary to a decision of the case, the evidence shows that when the mules arrived at Fulton L. T. Callahan, one of the plaintiffs, unloaded the mules in the presence of Mr. Woods, the general freight agent at that place. Callahan testified as follows:

''Q. What was the condition of the mules the night they arrived and next morning? A. Very bad. I refused to receive them. I knew they were exposed. I talked to Mr. Woods. I told him I would not accept them. I felt that they were responsible, and I would not take them; but Mr. Woods told me if I had a barn or stable to put them in, we should take these mules and do the best we could for them. We woke the man up at the office, I think Mr. Pelley was there. Q. The superintendent? A. Yes, the superintendent. They told me to do the best we could in handling them and possibly we would get along without any trouble. Q. You did take them? A. Yes. Q. Did the railroad company have any veterinary look after them and doctor them? A. Yes, Dr. Cathcart. Q. Who paid his bill? A. The railroad company, I think. In fact, I know they did. Q. Did you ever make any statement in writing, sworn to by either you or Mr. Howard, to any agent of the railroad company of your expected claim, or the claim you are suing on here? A. No, I asked them for it, but they didn't pay me any attention at all. Q. You made no claim in writing whatever? A. I don't think I did. Q. You say the agent of the company helped to unload them? A. Yes, the station agent, Mr. Woods. Q. He was present and helped unload them? A. Yes, sir. Q. Is he the one

that wrote on the freight bill the condition of the mules?
A. I presume he wrote it, or had it written. Q. Who
was it who told you to do the best you could with them
and that they would treat you right about it? A. I think
it was Mr. Pelley and Mr. Woods. Q. Who is Mr. Pel-
ley? A. Superintendent of the Tennessee Division."

Dr. Cathcart testified that he treated the mules and
that the railroad company paid his bill.

It is admitted that on the freight bill presented to
the plaintiffs at Fulton, Kentucky, at the time of the
delivery of the mules, there was written by the agent of
the railroad company this: "Shipment delivered January
16th, under protest; colds developing; throats swelling;
flanks drawing, indicating serious conditions, account un-
loading in cold rain at Mounds, Illinois, January 11,
1913."

With the pleadings and evidence in this condition
three questions are presented for our decision: First,
was clause six in the contract of shipment a reasonable
and valid stipulation? Second, could it be waived? Third,
was it waived?

The contract of carriage here involved was made in
Illinois for shipment to a point in Kentucky, and, there-
fore, it was an interstate contract, under the Federal
legislation regulating interstate commerce, and this leg-
islation has been held to be controlling notwithstanding
that it may conflict with State constitutions and laws.
Adams Express Co. v. Croninger, 226 U. S., 491, 57 L.
Ed., 314; M. K. & T. Ry. Co. v. Harriman Bros., 227 U.
S., 657, 57 L. Ed., 690.

In this last mentioned case the contract of carriage
in addition to placing a limited value on the live stock
shipped, provided that an action on the contract could
not be sustained unless brought within ninety days after
the damages sought to be recovered had accrued. In
holding that both of these limitations were valid, the
court said:

"The liability sought to be enforced is the 'liability'
of an interstate carrier for loss or damage under an
interstate contract of shipment declared by the Carmack
amendment of the Hepburn act of June 29, 1906. The
validity of any stipulation in such a contract which in-
volves the construction of the statute, and the validity
of a limitation upon the liability thereby imposed is a
Federal question to be determined under the general
common law, and, as such, is withdrawn from the field

of State law or legislation. * * * The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence. * * * The policy of statutes of limitation is to encourage promptness in the bringing of actions, that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents, or failure of memory. But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short.''

In Hutchinson on Carriers, Vol. 1, Secs. 442, 443, it is also said that a provision in the contract of carriage imposing upon the owner of the property injured, as a condition precedent to enforcing the carrier's liability, the duty of giving notice of such claim within a reasonable time, is a valid stipulation. To the same effect is Elliott on Railroads, Vol. 4, Sec. 1512.

Section 196 of our Constitution provides, in part, that ''no common carrier shall be permitted to contract for relief from its common law liability,'' and it was held in Ohio & Mississippi Ry. Co. v. Tabor, 98 Ky., 503, that a condition in a contract made in this State for the carriage of live stock to a point in another State limiting the time in which written notice of a claim for damages should be given to the carrier, was in violation of this provision of the Constitution, and, therefore, void. The same ruling was made in Brown v. Illinois Central R. R. Co., 100 Ky., 525.

But in Adams Express Co. v. Walker, 119 Ky., 121, it was ruled that a stipulation limiting the liability of the carrier was not a violation of this section of the Constitution if the contract of carriage was made and the injury for which damages were sought to be recovered by the owner occurred in another State, although the contract of carriage provided for the transportation of the stock to a point in this State. To the same effect is Cleveland & St. Louis Ry. Co. v. Druien, 118 Ky., 237.

Treating this case, however, as an interstate transaction, subject to the Federal Statute regulating interstate commerce, the stipulation in the contract limiting the time in which the claim for damages should be presented as a condition precedent to the maintenance of

a cause of action will be regarded as a valid condition, and we also think that it was a reasonable one at least under the facts of this case. It allowed the shipper ten days from the time the stock was removed from the car in which to present a claim for damages, and manifestly this afforded him in this case reasonable opportunity to ascertain the damage, if any, the stock sustained in carriage and to prepare and present his claim.

The next question is, could this condition in the contract of carriage be waived? Upon this subject it is said in Hutchinson on Carriers, Vol. 1, Sec. 444, that, "A condition requiring that notice of a claim must be presented within a certain time, being intended for the benefit of the carrier, he may, either expressly or by conduct inconsistent with an intent to rely upon it, waive the benefits of the condition. Thus, if the carrier, by his conduct, should induce the owner to delay the presentment of the notice until after the time fixed for presenting it had expired, he would not be permitted to escape liability on the ground that the notice of claim was not presented within the stipulated time. And if the agent of the carrier should induce the owner to go to the trouble and expense of making out a notice of his claim, and should lead him to believe that its presentment would not be insisted upon within the stipulated time, the carrier would be estopped from availing himself of the owner's failure to present it within such time as a defense. So, if the carrier should accept a verbal notice without objection, and should treat the claim as pending, his conduct would amount to a waiver of a condition that the notice should be in writing."

In Hinkle v. Southern Ry. Co., 126 N. C., 932, 36 S. E., 348; A. T. & S. F. Ry. Co. v. Wright, 78 Kan., 94, 95 Pac., 1132; Lasky v. Southern Express Co., 92 Miss., 268, 45 So. R., 869; Adams v. Colorado & Southern Ry. Co., 49 Col., 475, 36 L. R. A. (N. S.), 412; Hudson v. Northern Pacific Ry. Co., 92 Iowa, 231, 54 Am. St. Rep., 550; Gilliland v. Southern Ry. Co., 85 S. C., 26, 27 L. R. A. (N. S.), 1106; A. T. & S. F. Ry. Co. v. Robinson (Okla., not reported), 129 Pac., 20; St. Louis & San Francisco R. R. Co. v. James (Okla., not reported), 128 Pac., 279, it was held that a provision like the one embodied in this contract of carriage could be waived, and, upon principle, there seems no good reason why this character of condition in a contract for carriage cannot be waived.

The purpose of this condition in the contract was, of course, to give the carrier timely notice of the condition of the stock, and of the assertion of the claim for damages and opportunity to investigate the matter while the facts were fresh and accessible. This being the purpose of the condition, we think it is as well satisfied when the agent of the carrier to whom notice might be given has actual knowledge of the condition of the stock at the time of their delivery at the point of destination and of the fact that a claim for damages will be asserted, as it would be by the service of a written notice; and so, if the agent to whom written notice might be given, induces the owner, by his conduct or assurances, to believe that written notice will not be necessary, and, acting upon this belief, the owner fails to give the written notice, the carrier should not be allowed to defeat his claim because he failed to give the written notice. There is no particular sanctity about a contract for the shipment of live stock or about the conditions in such a contract, nor is there any reason why the same rules of law that govern other persons in their relations to contracts, and their right to waive provisions inserted for their benefit, should not be applied to the parties to these contracts. In private affairs, uncontrolled by statute, there is scarcely any provision in a contract that a party to the contract may not waive if he pleases to do so. The general rule being that a party to a contract who is fully advised of the facts will not be permitted, by his conduct manifesting a waiver, and upon which the other party relied and had a right to rely, to prejudice the rights of the other party by asserting that the stipulation could only be waived in writing, and this well-established principle should be applied to contracts like this.

In Owen & McKinney v. L. & N. R. R. Co., 87 Ky., 626, which was a suit to recover damages for injury to a horse caused by the negligence of the carrier, the contract contained a stipulation requiring the owner to give notice in writing of his claim for damages as a condition precedent to a right of recovery for injury to stock. The owner failed to give the written notice, which the court held to be a reasonable requirement in the contract, but ruled that the notice was waived by the actual notice received by the agent to whom written notice should have been given, of the injury to the horse, upon which the cause of action was based. The court said:

"The fact of the injury and of appellants' claim was not only known to the officers and agents of the company, but an actual inspection or examination of the horse made, as the proof conduces to show, by a surgeon, at the instance of the company, skilled in the treatment of such injuries as the horse had received."

In Railway Co. v. Kirkham, 63 Kan., 255; Kidwell v. Oregon Short Line R. Co., 208 Fed. Rep., 1; Clegg v. St. Louis R. Co., 203 Fed. Rep., 971, there are expressions to be found indicating that the court was of the opinion that a clause like the one here in question could not be waived; but we think an examination of these cases will show that these courts really said that the facts in the cases under consideration did not amount to a waiver, and not that a condition like this could not be waived under any circumstances.

But, whatever views other courts may entertain of this question, it is our opinion that the condition in the contract could be waived, unless it be that clause seven, providing that "no employe of the railroad company is authorized to change or waive the provisions of this contract," makes indispensable the written notice required by clause six.

We are not prepared to say, nor is it necessary in disposing of this case, that we should rule that any employe of the railroad company might waive the condition in clause six, or other provisions of the contract. But we think any agent of the railroad company to whom the shipper may give the notice provided for in clause six may waive the written notice, and that the stipulation in clause seven does not have the effect of nullifying a valid waiver made by the agent to whom the written notice might be given.

If the provision in clause seven is absolutely controlling, and no employe of the railroad company can waive any provision in clause six or any other parts of the contract, then, under no circumstances could there be a waiver of the stipulation requiring written notice. We are not inclined to adopt a construction of the contract that would enable carriers, through their agent, to practice in effect a fraud on shippers by inducing them to believe that no written notice would be required and then defeat their just claim because the written notice had not been given. To avoid the unreasonable and unfair effect of such a construction, our opinion is that the word "employe" in clause seven does

not include, in cases like this, the persons mentioned in clause six to whom notice must be given. Whether any other employes are exempted from the operation of the provision in clause seven, it is not necessary here to consider.

We, therefore, think the proper construction of the contract is that the condition in clause six requiring written notice may be waived by any of the persons mentioned in this clause who had knowledge of the condition of the stock, the cause to which it was attributed, and that the owner asserted or intended to assert a claim for damages, and that the waiver may be effected by such acts or conduct as might reasonably be calculated to induce the shipper to believe that written notice was not required. This waiver, however, to be effective, should occur within the time in which the written notice must be given and the sufficiency of it, unless the facts are admitted, should be submitted to the jury in a proper instruction.

Some claim is made by counsel for the railroad company that because it filed with the Interstate Commerce Commission its tariff classifications and schedules, showing the limitations in its contract, that the effect of this was to take the contract out of the general rules that control in the construction of contracts and to put this contract beyond the power of the parties to waive its conditions.

We think it a sufficient answer to this to say that the Interstate Commerce Commission does not attempt to enforce contracts made between carrier and shipper and has no authority to determine the validity or legality of such contracts; the construction, validity and effect of these contracts being left to the courts. Traders' & Travelers' Union v. P. & R. Co., 1 I. C. C., 371; Kentucky & Indiana Bridge Co. v. L. & N. R. R. Co., 2 I. C. C., 162; Greenbaum Co., v. C. & O. Ry., 25 I. C. C., 352.

The remaining question is, do the facts disclosed by the record amount to a waiver?

If the facts of this case do not establish a waiver it would be difficult to describe acts or conduct that would. As shown by the undisputed evidence, the railroad agent at the place of destination was notified that the shipper would not receive the stock because of their damaged condition, and thereupon he told the shipper to take the stock and do the best he could for them, and that he would be treated right about it. The agent was also present

when they were unloaded and actually saw their condition and knew the cause to which it was attributed. In addition to this, the railroad company employed and paid a veterinary to attend the stock, and the agent of the company wrote on the bill of lading the damaged condition of the stock, the cause that produced it, and that it was received by the shipper under protest.

We think this conduct fully meets all of the conditions of a valid and sufficient waiver. In short, the actual notice the agent had was much fuller and more accurate than he would have had if the written notice had been given. A. T. & S. F. Ry. Co. v. Wright, 78 Kan., 94, 95 Pac., 1132; Hinkle v. Southern Ry. Co., 126 N. C., 932; Lasky v. Southern Express Co., 92 Miss., 268.

Wherefore, the judgment is reversed, with directions for a new trial.