**SCHAFF, Receiver, v. HUDGINS et al.**

No. 12361—Opinion Filed Jan. 15, 1924.

**1. Appeal and Error—Harmless Error—Amendments to Pleading.**

At the conclusion of the plaintiff's evidence the trial court, over the objection and exception of the defendant, permitted the plaintiff to file a reply to the answer of defendant. In view of the provisions of section 2822, Comp. Stat. 1921, this action complained of by the defendant on the part of the trial court did not constitute any substantial violation of any statutory right of the defendant.

**2. Trial—Demurrer to Evidence.**

When the evidence introduced by plaintiff in the trial court is sufficient to make out a prima facie case in favor of the plaintiff and against the defendant, it is not error for the trial court to overrule a demurrer to the evidence.

**3. Appeal and Error—Questions of Fact—Verdict—Damages to Cattle Shipment.**

A common carrier, undertaking to dip cattle, pursuant to the quarantine regulations of the State Board of Agriculture and the Bureau of Animal Industry of the Department of Agriculture of the United States, owes the duty to the owner of said cattle to exercise ordinary care in dipping the same. Whether or not such carrier, in so dipping said cattle, exercised ordinary care is a question of fact for the jury; and where there is competent evidence, which will reasonably sustain the verdict of the jury, this court will not disturb such verdict.

**4. Interest—Right to Interest on Unliquidated Damages.**

Interest cannot be recovered upon unliquidated damages, where it is necessary for a judgment or verdict to be had in order to ascertain the amount of same.

**5. Modification and Affirmance of Judgment.**

Record examined, and the judgment of the trial court modified and affirmed.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; A. C. Brewster, Assigned Judge.

Action by S. H. Hudgins and William Blair against Charles S. Schaff, receiver, for damages to cattle. Judgment for plaintiffs, and defendant brings error. Affirmed.

M. D. Green and H. L. Smith, for plaintiff in error.

McGuire & Marshall and A. R. Rucks, for defendants in error.

Opinion by PINKHAM, C. This suit was brought in the district court of Tulsa County on April 15, 1918, by defendants in error, as plaintiffs, against plaintiff in error, as defendant, to recover damages for the loss by death of certain cattle which plaintiffs claim died as a result of the negligent acts of the defendant, and to recover damages to other cattle which did not die, but were damaged as a result of the negligent acts of the defendant.

To plaintiffs' petition the defendant filed its answer, denying the material allegations of the petition, and alleging that the shipment of the plaintiffs' cattle and the forwarding of the same, and the receiving of the same was by virtue of and under certain written contracts, copies of which are attached to defendant's answer.

Defendant further alleges that it is not liable to the plaintiffs for the reason that plaintiffs did not comply with the said contracts.

By leave of the court, and over defendant's objection, the plaintiffs filed a reply at the conclusion of the plaintiffs' evidence.

At the beginning of the trial, defendant objected to the introduction of any evidence upon the ground that the pleadings and statements of plaintiffs' counsel showed that plaintiffs were not entitled to recover. This objection was overruled. Defendant also moved for judgment on the pleadings, which was overruled.

The trial of the cause resulted in a verdict in favor of the plaintiffs and against the defendant for the sum of $4,500.

Motion for new trial was filed and overruled, and judgment was rendered in favor of plaintiffs and against defendant for $4,500, with interest thereon at six per cent. per annum from May 15, 1916, and costs. Defendant excepted and in due time perfected his appeal to this court.

A number of specifications of error are set out in the petition in error, which are presented in defendant's brief under several propositions; the first of which is that the trial court erred in permitting the introduction of any evidence on behalf of plaintiffs, and in overruling defendant's motion for judgment on the pleadings.

It is contended that, as the defendant filed his answer specifically pleading the provisions of the original bill of lading, or shipping contract, and that plaintiffs filed no reply until the conclusion of the trial, the motion for judgment on the pleadings should have been sustained.

The argument is that, as plaintiffs did not allege in their petition that they had complied with the terms of the shipping contract by giving a written notice to the carrier within 91 days after the happening of any losses or injuries, setting up in detail a full statement thereof, therefore, under the state of the pleadings, the trial court committed reversible error in permitting the introduction of any evidence on behalf of the plaintiffs and in refusing to render judgment for the defendant and against the plaintiffs on the pleadings.

The record discloses that at the time of the objection of the defendant to the introduction of evidence and of the motion for judgment on the pleadings, there was no reply on file denying the allegations of the defendant's answer, but that a reply consisting of a general denial of the allegations of the answer was filed by permission of the court during the trial.

The reply shown to have been filed by leave of the court at the conclusion of the plaintiffs' evidence, the only objection being that the application for leave to file the reply was made out of time. This action, complained of by the defendant, on the part of the trial court did not, we think, constitute any substantial violation of any statutory right of the defendant. Section 2822, Comp. Stat. 1921: Sulzberger & Sons Co. v. Strickland, 60 Okla. 158, 159 Pac. 833; 31 Cyc. 247.

Plaintiffs' petition alleged that defendant failed to use ordinary care in the preparation of the cattle for shipping, whereby said cattle were injured, and for this breach of duty damages were claimed. It was not contended by plaintiffs that the failure to perform this duty in an ordinary prudent manner constituted a breach of contract, but that it constituted negligence. In other words, the action was not on contract but one sounding in tort.

It is without question the rule in this state that where the action is upon the contract, or where the action is in tort, and the plaintiff himself pleads the contract showing the stipulation for the giving of notice of injury, the burden is upon the plaintiff to allege and show that he has complied with the condition.

As before stated, the plaintiffs did not undertake to plead the contract under which the shipments were made, and did not depend upon such contracts to establish their rights other than to charge the defendant with the negligent performance of a duty which the defendant had undertaken, and damages were not sought because of a breach of any of the stipulations or conditions of the contract, but only for negligence in handling the cattle in connection with dipping operations.

In St. Louis & S. F. Ry. Co. v. Cox, Perry & Murphy, 40 Okla. 258, 138 Pac. 144, it is held:

"The plaintiffs declared upon a common-law cause of action, and the defendant by answer pleaded that the shipment was made under a special contract, and under the terms of said contract it was exonerated from damages. Held, that after the plaintiff proved that the shipment was made by them the burden shifted to the defendant to prove that it was made under a special contract under the terms of which it was released."

In Southern Pac. Co. v. Arnett, 111 Fed. 849, 50 C. C. A. 17, the Circuit Court of Appeals held:

"A special contract exacted by a carrier is a defensive weapon to be used by the carrier when sued by the shipper for an alleged violation of duty against which it was designed to afford protection, and a shipper suing to recover damages for negligence, on account of which the carrier is liable notwithstanding the contract, is not required to declare upon such contract."

We conclude the court did not err in declining to sustain the objection to the introduction of evidence or the motion for judgment on the pleadings.

Furthermore, even though the notice had not been given, it cannot be said that error was committed in view of the undisputed evidence offered by the defendant that the carrier's claim agent had a full opportunity to, and did, investigate the matter of negligence in handling of the cattle and their injuries.

The shipping contract upon which defendant relies provides that "the purpose of requiring this notice is to enable the carrier

to investigate and settle such claims before suit is instituted."

It seems to be a well-established rule that when the carrier has made an examination of the nature and extent of the injury, the purpose of requiring notice has been accomplished, and the same protection has been afforded as though the notice had been given. Kine v. Southern Ry. Co., 153 N. C. 398, 69 S. E. 265; Baltimore v. Nashville C. & S. Ry. Co., 125 Tenn. 627, 148 S. W. 214; Combine v. St L. I. M. Co., 105 Ark. 406, 151 S. W. 237; Kelly v. Southern Ry. Co., 84 S. C. 251, 66 S. E. 198; Castiner v. Oregon-Washington Ry. Co., 89 Wash. 694, 155 Pac. 167; Cockrill v. Missouri, K. & T. Ry. Co., 90 Kan. 650, 136 Pac. 322; Howard & Callahan v. Illinois C. Ry. Co., 161 Ky. 783, 171 S. W. 442.

The second proposition discussed by defendant in his brief is that the trial court erred in overruling defendant's demurrer to plaintiffs' evidence and in refusing to give the peremptory instruction for defendant.

It is contended that as the burden was on the plaintiff to show negligence on the part of the defendant that no negligence was shown, and since the shipping contract required plaintiffs to give within 91 days a written notice of their losses and injuries, that defendant's demurrer to plaintiffs' evidence should have been sustained or the jury should have been instructed to return a verdict in defendant's favor and against the plaintiffs.

We have already considered the question of notice, and an examination of the record discloses that, the plaintiffs' evidence was sufficient to justify a verdict for plaintiffs.

The record contains a copy of order No. 210, promulgated by the Secretary of Agriculture for the dipping of shipments of live stock moving from tick infested territory to "clean" territory, in interstate commerce, providing, in part:

"Cattle which are to be dipped shall, prior to the dipping, be given an opportunity to drink sufficient water to quench their thirst and be carefully handled and not dipped while they are in a heated condition."

Mr. Hudgins, one of the plaintiffs, testified that when cattle were shipped from Gravis Switch, Tex., they were in fine shape The shipment was made on April 16th, and April 28th, John Skinner arrived at Muskogee and found the cattle there. He found that the cattle were not having sufficient water and were very crowded in the carrier's cattle pens. When complaint was made to the yard foreman, Skinner was told by the former. "I can't

do nothing for you", and, as the pens were full of cattle, there was no place to put them. In some of the troughs there was no water, and the others leaked. Into these troughs there was only one way to get water, which was by a small hose. There was not sufficient room for these cattle, which had been in shipment for about 14 days, to lie down or rest without trampling upon each other. The mangers and feed racks in the pens were torn up and hay would not stay in them. The cattle were driven through the dipping vat by the defendant's own employes, and drank the solution while going through the vat and while standing in the pens after they had been dipped from the pools which formed there.

L. Roberts, live stock inspector for the Western Weighing and Inspection Bureau at Fort Worth, testified that thirsty cattle are more apt to drink the dipping solution than cattle that are not thirsty.

The testimony showed that when the shipment arrived at Osage one of the cattle was dead and three others were down, and the cattle in the shipment were droopy, cramped, and fell in numbers on the way to the pasture. A great number of the cattle would fall over when they drank water, and groan " a good deal like a person that is cramped in his stomach", and eventually die. The symptoms of the cattle that died and fell in the cars between Muskogee and Osage were the same as those that developed in those which were unloaded and driven to the pasture. Thirty head died on the road to pasture.

"When the evidence introduced by plaintiff in the trial court is sufficient to make out a prima facie case in favor of the plaintiff and against the defendant, it is not error for the trial court to overrule a demurrer to the evidence." Schaff v. McGuyre, 87 Okla. 41. 208 Pac. 263.

The third proposition presented is that "the shipment was dipped pursuant to requirement of the law, and the damages were purely consequential, and plaintiffs were not entitled to recover.

The argument is, as we understand it, that as the cattle were required to be dipped pursuant to the law of the United States, there could be no liability on the defendant for negligence in the matter of feeding, watering, sheltering, and preparing the cattle for dipping.

The fact that the cattle were required to be dipped under the federal law could not operate to relieve the defendant from acts of negligence in failing to water, feed, and care for the cattle as an incident to the dipping operation.

In the case of Schaff, Receiver, v. Hudgins et al., 96 Okla. 173, 221 Pac. 90, the same contention was made, that the defendant could not be held liable for its negligence in matters incident to the dipping operations. It is held in that case, in the first paragraph of the syllabus:

"A common carrier undertaking to dip cattle pursuant to the quarantine regulations of the State Board of Agriculture and the Bureau of Animal Industry of the Department of Agriculture of the United States, owes the duty to the owner of said cattle to exercise ordinary care in dipping the same. Whether or not such carrier in so dipping said cattle exercised ordinary care is a question of fact for the jury; and where there is competent evidence which will reasonably sustain the verdict of the jury, this court will not disturb such verdict."

The fourth proposition presented is that the witness William Blair was not shown to be qualified to testify as to the condition in which the shipment should have reached destination, and what its value would have been, and that the trial court erred in permitting him to testify to such value.

In answer to the question as to what the market value of the shipment of cattle at Osage, and in that vicinity, upon their arrival at Osage, on or about April 30, 1916, would have been had they reached there as they ought to have arrived, this witness stated "$80 per head."

The witness also testified over defendant's objection that the market value of the animals in the condition he saw them in pastures at point of destination was $70 per head.

The case of Western Union Telegraph Co. v. Coyle, 24 Okla. 740, 104 Pac. 367, is cited as sustaining defendant's contention that this testimony should not have been received.

In the case cited it appears the witness did not know whether the article there in question had a market value or not; he had never seen it.

In this case the witness Blair, a man 74 years of age, had been in the cattle business all his life, had raised cattle in Texas, Kansas, and Oklahoma. He had large pastures in Osage county in 1916, and saw the cattle in question shortly after they were taken out to pasture from their destination; he stated there was a market value for cattle of the character of these cattle in the spring of 1916, and he was acquainted with that value. We think the rule announced in the case cited has no application to the instant case.

In Atchison, T. & S. F. Ry. Co. v. Baker, 37 Okla. 48, 130 Pac. 577, it is held:

"The amount of knowledge which a witness must possess before a party is entitled to his opinion as an expert is a matter which must be left largely to the discretion of the trial court, and its ruling thereon will not be disturbed on appeal, unless clearly erroneous."

A further proposition discussed by counsel for defendant in their brief is that the rights and liabilities of the parties depended on the shipping contract, federal regulations as to interstate commerce and common-law principles as applied to the federal courts, and that as the contract was silent as to any condition or agreement on the part of carriers to do dipping and by no federal statute, or decision is a common carrier required to do dipping, the trial court erred in giving to the jury its instruction number one.

The contention of defendant under this proposition was considered and decided in the case of Schaff, Receiver, v. Hudgins et al., supra; in that case it is said:

"In the instant case the plaintiff's petition does not seek by the allegations and averments thereof to hold the defendant liable as insurer, and no such contention was made upon the trial of the cause, and the trial court, by the instructions to the jury limited the defendant's liability alone to the failure of the defendant, and its employes to exercise ordinary care in the handling of the live stock in its stock pens and dipping vats and drainage pens, and in watering and feeding the cattle and in overcrowding them in the pens; such was the negligence charged by the plaintiffs in their petition, and to which the testimony of the plaintiff was directed upon the trial."

It is further contended that the trial court erred in giving to the jury incorrect, inapplicable, confusing, and misleading instructions.

These instructions have been examined, a number of which are identical with instructions considered upon the same or similar state of facts in the case of Schaff, Receiver, v. Hudgins et al., supra, and were there upheld, and in this connection we may say that all the important questions raised by counsel for defendant in their exceptionally able brief have been determined adversely to the defendant's contentions in the recent case of Schaff v. Hudgins, supra.

The ninth proposition discussed by counsel for defendant in their brief is that the verdict and judgment were unreasonable and excessive, both as to the amount of damages awarded plaintiffs, and for the further rea-

son that they were not entitled to interest thereon.

As to the amount of damages awarded plaintiff, we do not think the same was excessive in view of the evidence disclosed by the record.

The jury returned a verdict in favor of the plaintiffs for the sum of $4,500, with interest thereon at six per cent. per annum from and after May 15, 1918. Interest cannot be recovered upon unliquidated damages, where it is necessary for a judgment or verdict to be had in order to ascertain the amount of the same.

Counsel for plaintiffs say in their brief:

"The jury should not have allowed interest upon the claim of the plaintiffs, and such interest up to the time of the rendition of the verdict ought not to have been allowed in the judgment."

The judgment of the trial court is, therefore, modified by deducting therefrom interest on the amount of damages allowed from May 15, 1916, to December 1, 1920, the date of the verdict, and the judgment of the trial court as so modified, should, we think, be affirmed.

By the Court: It is so ordered.