## MISSOURI, K. & T. R. CO. v. WILLIAMSON.

No. 8745—Opinion Filed April 9, 1918.

On petition for Rehearing, May 7, 1918. On Second Petition for Rehearing June 3, 1919.

(Syllabus by the Court.)

**1. Carriers—Intrastate Carriage of Freight —Conditions Precedent to Suit—Validity.**

Any provisions in a contract executed by a common carrier for the intrastate carriage of freight, which attempt to abridge the time within which rights arising from the breach of such contract may be enforced, and which require notice after a breach of such contract as a condition precedent to maintaining an action therefor, are null and void, being in conflict with section 9, art. 23, of the Constitution.

**2. Carriers—Carriage of Live Stock—Dipping Cattle—Ordinary Care.**

A common carrier, undertaking to dip cattle, pursuant to the quarantine regulations of the State Board of Agriculture and the Bureau of Animal Industry of the Department of Agriculture of the United States, owes the duty to the owner of said cattle to exercise ordinary care in dipping the same.

**3. Appeal and Error—Carriers—Live Stock —Ordinary Care—Question for Jury— Verdict.**

Whether or not such carrier, in so dipping said cattle, exercised ordinary care, is a question of fact for the jury; and where there is competent evidence, which will reasonably sustain the verdict of the jury, this court will not disturb such verdict.

Error from District Court, Osage County; R. H. Hudson, Judge.

Action by J. H. Williamson against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This action was commenced by the defendant in error, hereinafter styled the plaintiff, against plaintiff in error, hereinafter styled the defendant, to recover damages occasioned to plaintiff by the death of thirteen head of cattle, the property of plaintiff, because of

the negligence of the defendant.. The amended petition of plaintiff alleges that the. defendant transported about 100 head of cattle belonging to plaintiff from Panama, Okla., to Wynona, Okla.; that when said cattle were unloaded at Wynona they were greatly famished for water; that no opportunity had been afforded plaintiff between Panama and Wynona to water said cattle; that plaintiff requested that he be given an opportunity to water them; that, when said cattle were unloaded at Wynona, plaintiff asked the agents and employes of the defendant to afford him an opportunity to water said cattle, but that said agents and employes declined and refused to give plaintiff an opportunity to water the cattle, but retained possession of said cattle and held them for the purpose, of dipping them in a dipping vat at Wynona; that said dipping vat was the property of defendant, and the dip furnished therein for the purpose of dipping the cattle was the property of defendant; that plaintiff, when said cattle were unloaded at Wynona, advised the defendant, its agent and employes, that said cattle ought not to be dipped until they had been given an opportunity to drink water, for the reason that, unless watered, they would be apt to drink and would drink some of the dip contained in the dipping vat, which dip contained arsenic and was poisonous; that, notwithstanding the warning on the part of plaintiff, the agents and employes of the defendant drove said cattle into the dipping vat without watering them; that said cattle drank of said arsenical dip, as a result of which 13 head, of the reasonable value of $425, died. The petition alleges negligence on the part of the defendant in failing to water or permit the plaintiff to water said cattle before they were dipped. The defendant answered, denying generally the allegations of the petition, and alleging further that said cattle were carried by it under and by virtue of the terms of three written contracts of shipment, copies of which were exhibited as a part of the answer. The answer then pleads the conditions of said contracts of shipment as to notice and as to the time of bringing this action as a bar thereto. Upon motion of the plaintiff all that part of the answer containing reference to the three contracts of shipment and pleading the conditions therein contained was stricken, to which the defendant excepted.

The evidence at the trial was in conflict as to whether or not the cattle were watered at Muskogee when they were unloaded and fed and delivered to the defendant. Evidence on behalf of the plaintiff tends to show that they were not watered at Muskogee. The evi-

dence on behalf of the defendant tends to show that the cattle were afforded an opportunity to drink water in the cattle pens at Muskogee. The evidence on behalf of the plaintiff shows that when the cattle were unloaded at Wynona, before dipping, in conformity with the regulations of the State Board of Agriculture and the Bureau of Animal Industry of the Department of Agriculture of the United States, the plaintiff demanded of the agents and employes of the defendant that said cattle be watered, and that he be afforded an opportunity to give them water before they were dipped, but that such agents and employes of the defendant refused to furnish plaintiff such opportunity, because they were in a hurry and wanted to catch the next train away from Wynona. There is no direct evidence in the record that any of the cattle were seen to drink of the dip contained in the dipping vat. The evidence shows that the mixture contained 10 pounds of arsenic to each 500 gallons of water; that the dipping vat was about 50 feet long, 3½ feet wide, and 8 or 9 feet deep. The evidence on behalf of the plaintiff shows that one of the animals died within one hour after being dipped, that eight of them died before sundown that day, and that the remainder died before the next morning. An expert, testifying on behalf of the plaintiff said, in answer to a question describing the symptoms exhibited by the cattle that died, that they were symptoms of arsenical poisoning. There was evidence on behalf of the defendant that a post mortem examination was made of eight of the cattle that died, and that no traces of arsenic were found. The testimony on behalf of the defendant tended to show that the weather was extremely cold at the time these cattle were dipped, and an expert testifying in behalf of the defendant expressed the opinion that the animals, being gaunt and thin, died as a result of the shock of being immersed in the cold dipping solution contained in the vat. His testimony was that cattle dying from shock because being immersed in cold water, would exhibit the same symptoms as was testified that the cattle did exhibit. The jury returned a verdict for the plaintiff, and to reverse the judgment rendered upon this verdict the defendant prosecutes this proceeding in error.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

Leahy & McDonald and F. W. Files, for defendant in error.

RUMMONS. C. (after stating the facts as above). The first assignment of error urged by the defendant complains of the ruling of the court in striking from its answer the al-

legations with respect to the written contracts under which it alleged that it carried these cattle. In the briefs of the parties this assignment of error is discussed upon the theory that this was an interstate shipment of cattle, and defendant relies upon the cases of Missouri, Kansas & Texas R. Co. v. Skinner, 61 Oklahoma, 160 Pac. 875, and Midland Valley Railway Co. v. Ezell, 62 Oklahoma, 162 Pac. 228, as authority for the proposition that the dipping of these cattle was a part of the contract of carriage and covered by the contracts entered into between plaintiff and defendant. The answer of the defendant, however, discloses that the contracts upon which they rely are not for interstate shipment, but for an intrastate shipment. The contracts as exhibited as a part of defendant's answer were executed by plaintiff and defendant at Muskogee, Okla., to carry the cattle to Wynona, Okla. The decisions of this court upon contracts for the carriage of live stock in interstate commerce based upon the Carmack Amendment to the Interstate Commerce Act, therefore, have no application to the instant case.

It is, on the other hand, ruled by the case of Chicago, Rock Island & Pacific Railway Co. v. Harrington, 44 Okla. 41, 143 Pac. 325, where it is held:

"In respect to intrastate shipments and contracts, any provision, express or implied, 'stipulating for notice or demand other than as may be provided by law, as a condition precedent to establish any claim, demand or liability, shall be null and void,' under section 9, art. 23 (section 358, Williams' Ann. Ed.) Constitution of Oklahoma."

This case has been followed by this court in Mo., Kan. & T. R. Co. v. Chowning, 62 Oklahoma, 162 Pac. 1105.

The defenses pleaded by the defendant under the contracts made a part of its answer were: First, the contracts provided that the shipper should load and unload the cattle and should feed and water said live stock and attend to them when in the carrier's stock yards, pens, or cars at his own cost and expense. Second, that the shipper would furnish reports signed by himself and the parties in charge of said live stock to the conductor of the train at the end of each division as to the condition of said live stock; that the shipper would be estopped from denying the truth of such reports, and his failure to furnish such reports would be conclusive evidence that said live stock was in good condition. Third, that the shipper should give notice in writing to the conductor in charge of the train or the nearest station or freight agent of the carrier of all injuries or damage to said live stock before such live stock

was removed from the pens at destination. Fourth, that the shipper should give notice in writing of all damages to the nearest station or freight agent within five hours after said stock were delivered. Fifth, the shipper should within thirty days after the happening of an injury or delay file with a freight or station agent of the carrier a written claim for such damages. Sixth, that no suit should be maintained unless instituted within 91 days after the happening of the injury complained of.

As to the first of the defenses stricken by the court, it is possible that such defense was properly pleaded; but inasmuch as the plaintiff in his amended petition assumed the duty of watering the cattle while in transit and in the pens of the defendant and only complains of the defendant for its failure to permit him to water said cattle or afford him an opportunity so to do, any error there might have been in striking this paragraph of the answer resulted in no prejudice to the defendant and is therefore harmless.

As to the remaining defenses set up in the answer based upon the contracts of carriage, they all fall within the rule laid down in Chicago, R. I. & P. R. Co. v. Harrington, supra. All of the provisions urged, except the last one limiting the time within which action must be instituted, stipulated for notice and are in conflict with section 9, art. 23, of the Constitution and are therefore null and void. In Gray v. Reliable Insurance Co., 26 Okla. 592, 110 Pac. 728, Mr. Justice Williams, who delivered the opinion of the court, says:

"Section 9 of article 23 of the Constitution of this state provides that 'any provisions of any contract or agreement, express or implied, stipulating for notice or demand otherwise than as may be provided by law, as a condition precedent to establish any claim, demand or liability, shall be null and void.' The obvious intention of this provision was to prevent the abridging of the time within which rights under the law may be enforced, and also to prevent any notice being required after a breach of a duty imposed by law as a condition precedent to maintaining an action therefor."

With this interpretation of section 9, art. 23, of the Constitution, it is apparent that the last provision of the contracts urged by the defendant as a defense is also in conflict with said section. It is clearly an attempt to abridge the time within which rights under the law may be enforced. So that whether the defendant be correct in its view that the dipping of the cattle was a part of the contract of carriage or the plaintiff be correct in his view that it was an independent contract, the court committed no error in strik-

ing from the answer of the defendant the defenses based upon the provisions of the contracts of carriage.

It is next urged by counsel for defendant that the court committed error in refusing certain instructions requested by the defendant and in giving certain instructions given by the court. The instructions requested by the defendant present in different forms the proposition that there was no duty upon the defendant to water the cattle or to furnish the plaintiff facilities for watering the cattle before the same were dipped. The instructions given of which complaint is made are as follows:

"(7)   You are instructed that under the evidence in this case the defendant, Missouri, Kansas & Texas Railway Company, owed to the plaintiff the duty of exercising ordinary care in the dipping of the plaintiff's cattle; that is, such care as an ordinarily prudent and reasonable person would have exercised with reference to his own cattle under the same or similar circumstances. And if the defendant failed to exercise such ordinary care, it was guilty of negligence, and if, as the result thereof some of the plaintiff's cattle died, then and in that event your verdict should be for the plaintiff and against the defendant. And in this connection you are instructed that if you find and believe, from a fair preponderance of the evidence, that the cattle of the plaintiff, at the time they were dipped by the defendant company, were in a condition of extreme thirst, or were in a famished condition for the want of water, and that the employes of the defendant, whose duty it was to dip the said cattle, knew of the said condition of the cattle, and you further find and believe from a fair preponderance of the evidence, that cattle in the condition that the plaintiff's cattle then were in would drink of any liquid through which they were driven, or in which they were submerged, and that the employes of the defendant company, whose duty it was to dip the said cattle, knew or had notice of such fact, and you further find and believe from a fair preponderance of the evidence, that the said cattle, if watered at a reasonable time before dipping, would not drink of the arsenical solution in which they were to be dipped, and you further find and believe from the evidence that the employes of the defendant company knew, or in the exercise of ordinary care must have known, of such fact, then and in that event it was the duty of the employes of the defendant company to water the said cattle, and if you further find and believe from a fair preponderance of the evidence in the case that, because of the failure of the employes of the defendant company to water the said cattle, some of the cattle of the plaintiff drank of the arsenical solution in which they were dipped by the defendant company, and died as the result thereof, then and in that event your verdict

should be for the plaintiff and against the defendant.

"(8)   You are instructed that it is not claimed or charged by the plaintiff that the defendant company was guilty of any other negligence in the dipping of the plaintiff's cattle than the failure to water the said cattle before dipping the same, and before you would be warranted to find a verdict for the plaintiff you must find from a fair preponderance of the evidence that a person of ordinary prudence and intelligence, under the circumstances, would have watered the said cattle before dipping them, and that the defendant company failed to water the said cattle and that as the proximate result of such failure to water the cattle, the said cattle, or some of them drank of the arsenical solution in which they were dipped, and died as the result thereof."

Under these instructions the court advised the jury that the defendant owed the plaintiff the duty of exercising ordinary care in dipping his cattle; that, if they believed that at the time said cattle were dipped they were in a condition of extreme thirst, and the employes of the defendant engaged in dipping the cattle knew of said condition, and if they found that, if they were in the condition the plaintiff claimed they were in, they would drink of any liquid in which they were dipped and that the employes of the defendant, whose duty it was to dip said cattle, knew such fact, and if they further found that said cattle, if watered at a reasonable time before dipping, would not drink of the solution in which they were dipped, and that the employes of the defendant knew, or in the exercise of ordinary care ought to have known, of said fact, it was the duty of the defendant to water said cattle, and that if the jury found that because of the failure to water the cattle some of them drank of the solution in which they were dipped, and died therefrom, they must find for the plaintiff. The eighth instruction briefly presents the same view of the law to the jury.

We are of the opinion that the defendant clearly owed the plaintiff the duty to exercise ordinary care in dipping his cattle; that it was the duty of the defendant to exercise such care as a reasonably prudent person would exercise in the circumstances of the case. From the evidence of the plaintiff the agents of the defendant were advised of the thirsty condition of the cattle and the probability that they would drink of the solution in which they were dipped unless they were watered before being dipped. They were requested by the plaintiff to afford him an opportunity to water said cattle before dipping commenced. Whether the contracts relied upon by the defendant imposed the duty of watering the cattle upon plaintiff or

not, when said cattle were in charge and in possession of the defendant, the defendant owed plaintiff the duty to afford him reasonable opportunity to perform the duty imposed upon him. The evidence of the plaintiff shows that, although the attention of the defendant's agents and employes was called to the probable consequences of dipping these cattle without their being watered, they refused to delay the dipping long enough to permit plaintiff to haul water for his cattle. The question of what is ordinary care under the circumstances of each case is for the jury to determine, and we think the instructions complained of fairly presented this question to the jury, and the trial court committed no error in giving them.

It is finally urged by defendant that the court erred in refusing to direct a verdict for the defendant. In support of this assignment it is contended that there was no evidence that any of the cattle drank of the solution contained in the dipping vat, and that the evidence is not sufficient to support a finding that the cattle died because of drinking such solution. Under the familiar rule that where there is competent evidence which, together with the logical inferences that may be drawn therefrom, will reasonably sustain the verdict of the jury, this court will not disturb such verdict (Chicago, Rock Island & Pacific R. Co. v. Newburn, 39 Okla. 704, 136 Pac. 174; Reed v. Scott, 50 Okla. 757, 151 Pac. 484), we are of the opinion that, while the record contains the evidence of no witnesses who testified to seeing the cattle drink, the jury might logically from the evidence deduce the inference that the cattle did drink of the solution. The jury had before it the evidence of the plaintiff and defendant as to the cause of the death of these cattle. This evidence being in conflict, we are unwilling to disturb the verdict.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.

### On Petition for Rehearing.

RUMMONS, C. In a petition for rehearing defendant earnestly insists that this case is ruled by the case of Missouri, K. & T. Ry. Co. v. Ashinger, 63 Oklahoma, 162 Pac. 814, L. R. A. 1917D, 1180, rather than by Chicago, Rock Island & Pac. R. Co. v. Harrington, 44 Okla. 41, 143 Pac. 325; the latter case having been followed in the opinion affirming the judgment.

It is contended by defendant that the shipment of cattle involved in this action, being moved from Mena, Ark., to Wynona, Okla.,

was an interstate shipment, without regard to the fact that the bill of lading issued by the defendant to the plaintiff covered only an intrastate transportation of said cattle, and therefore that the rule of law applied in the Harrington Case is not applicable to the instant case. In the case of Missouri, K. & T. R. Co. v. Ashinger, supra, the question involved was the right of a passenger, who had purchased a ticket from Oklahoma City, to Colbert, Okla., at the intrastate rate, and who, at Atoka, Okla., had determined to continue his journey to Denison, Tex., to be carried upon the unused portion of his ticket to Colbert, Okla., and from there to Denison, Tex., at the interstate rate. It was held by this court that from Atoka the plaintiff was conveyed as an interstate passenger, and could be required to pay the interstate rate from Atoka to Denison. Mr. Justice Hardy, who delivered the opinion, cites a number of cases from the United States Supreme Court in support of the conclusion reached, but the cases cited in the opinion and cited in the petition for rehearing by the defendant seem to be cases involving freight and passenger rates, and involving the federal control of commerce, interstate in character, which may have been carried from point to point under local bills of lading.

It is urged by counsel for defendant as a ground for rehearing that the instant case was determined upon a theory not considered by either of the parties in the trial court. It is well to bear in mind the assignment of error presented by the defendant upon which this question arises. The defendant assigned error in the striking from its answer of three contracts between the plaintiff and the defendant, exhibited as a part of the answer, and the allegations therein with reference to said contracts. The question presented to this court on this assignment of error was whether or not the trial court erred as a matter of law in striking such matter from defendant's answer, and not whether the trial court was right in the theory upon which he made his order.

It may be conceded that this shipment of cattle was an interstate shipment, and yet defendant's assignment of error would not be well taken, for the reason that its answer does not plead the terms of any contract for interstate shipment, and the pleadings in the record do not show the provisions of any contract covering the interstate shipment of these cattle that could avail the defendant as a defense. On the contrary, defendant expressly alleges in its answer that it carried these cattle from Muskogee to Wynona under the contracts between plaintiff and defendant exhibited in its answer. It is true the

answer alleges the shipment of cattle by various carriers from Mena, Ark., to Wynona, Okla., and alleges that defendant was engaged in interstate commerce, and alleges a reduced rate of freight as a consideration for these contracts pleaded. There is nothing, however, in the answer to advise the court of any conditions under which these cattle were carried in interstate commerce, except the contracts between plaintiff and defendant made a part of the answer, and these contracts for the transportation of this freight show that they were made between plaintiff and defendant for intrastate carriage.

The facts in the instant case are on all fours with the case of Chicago, Rock Island & Pac. R. Co. v. Harrington, supra. In this case the plaintiffs pleaded the shipment of two cars of mules from Hico and Dublin, Tex., to Frederick, Okla.; that said mules were carried by the Texas Central Railway Company, and delivered to the St. Louis & San Francisco Railroad Company, which delivered them at Ft. Worth to the Chicago, Rock Island & Pacific Railway Company. At Lawton a bill of lading was executed between the plaintiffs and the St. Louis & San Francisco Railroad Company, for said mules to be delivered at Frederick. Upon this state of facts, Mr. Commissioner Thacker, who wrote the opinion of the court, says:

"The defense of the latter company is predicated upon a contract which it alleges the plaintiff made with it for the transportation of the mules from Lawton, Okla., to Frederick, Okla., without alleging that this contract was in aid of, or in any manner connected with, any interstate shipment or contract. There is nothing in this purported contract, * * * which so much as suggests that it is in any way connected with, or has any relation to, the interstate shipment bill of lading or contract made at Dublin * * * for the shipment from Texas to Oklahoma; but, to the contrary, this contract, upon which the St. Louis & San Francisco Railroad Company relies, purports to be an intrastate contract for shipment from Lawton to Frederick, Okla."

In the instant case the contracts relied upon by the defendant do not refer in any way to the interstate shipment of these cattle, nor is it alleged that they were executed by the defendant in performance of any contract of interstate carriage; but, on the contrary, it is alleged that the cattle were received and carried by the defendant under the terms of the contracts between plaintiff and defendants covering an intrastate carriage. It follows that, as the defendant did

not plead any contract covering interstate carriage of these cattle, but, on the contrary, alleged that they were received and carried by the defendant under the terms of the contracts between plaintiff and defendant covering an intrastate carriage, the action of the trial court in striking the part of the answer complained of must be considered under the law applicable to contracts relating to intrastate carriage of freight.

Counsel for defendant urge that, even conceding that the contracts relied upon were for the intrastate carriage of these cattle, the provisions of such contracts pleaded by it are still valid and effectual, and constitute a bar to plaintiff's action. Counsel rely upon section 828, Rev. Laws 1910, in support of this contention. Section 828 is as follows:

"A bill of lading is an instrument in writing, signed by a carrier or his agent, describing the freight so as to identify it; stating the name of the consignor and the terms of the contract for carriage, which may include reasonable requirements as to notice and demand of damages; and agreeing or directing that the freight be delivered to the order or assigns of a specified person at a specified place."

This section of our statutes was not in force at the time the case of Chicago, Rock Island & Pacific Railway Company v. Harrington, supra, arose, and therefore was not considered in that case. The case of Missouri, K. & T. R. Co. v. Chowning, 62 Oklahoma, 162 Pac. 1105, was written after the adoption of this section of our statute; but the attention of the court does not seem to have been called to it, and its effect is not considered in that case.

It is urged by counsel for defendant that the provision in section 828, supra, "which may include reasonable requirements as to notice and demand of damages," meets the provision of section 9, art. 23, Constitution of Oklahoma, cited in the opinion, and is a provision by law for such notice and demand of damages. Counsel for defendant has cited no authority in support of this contention, and we do not believe it to be well founded. The provision of section 9, art. 23, of the Constitution, supra, is:

"That any provision * * * stipulating for notice or demand other than such as may be provided by law * * * shall be null and void."

It is clear from a reading of this section that no notice or demand other than that provided by law may be required as a condition precedent to recovery. The section of the statute relied upon by the defendant pur-

ports to authorize contracts of carriage of freight to include reasonable provisions as to notice and demand of damages. It does not attempt to provide. for notice or demand as a condition precedent to liability, and therefore does not meet the requirements of section 9, art. 23, of the Constitution, and so far as authorizing any provisions as to notice of demand other than provided by law to be inserted in the bill of lading is in conflict with the Constituton.

The petition of defendant in error for rehearing should be denied.

### On Second Petition for Rehearing.

SHARP, J. It is undoubtedly true that the question whether the commerce is intrastate or interstate is to be determined by the essential characteristics of the commerce and not by mere billing or forms of contracts. Railway Commission v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. Ed. 1004; Texas & N. O. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442; Railway Commission v. Texas & P. R. Co., 229 U. S. 336, 33 Sup. Ct. 837, 57 L. Ed. 1215; Chicago, M. & St. P. R. Co. v. Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. Ed. 988. But the answer of the railroad company, while it refers to having received from the Midland Valley Railway Company at Muskogee "a shipment of cattle consigned by plaintiff from Mena, Ark., to J. H. Williamson, Wynona, Okla.," goes further and charges that the shipment was received and forwarded by virtue of the terms of three written contracts of shipment, copies of which are attached. These contracts all cover a shipment from Muskogee to Wynona, Okla., and are therefore intrastate. It is not charged that the shipment was a continuous one, nor are we informed in respect to the terms or conditions of the interstate contract of shipment. For a defense the answer relies wholly upon the terms and conditions of the intrastate bills of lading. These provisions are void under section 9, art. 23, of the Constitution, and therefore state no grounds of defense. If, in fact, the shipment was originally in interstate commerce, and had not lost that character, then the carrier, if it had a defense arising thereunder, should have set it up in bar of a recovery. Having relied upon a different defense, and the court having no means of knowledge of the terms of the interstate shipment, of course the defense, if it be such, is not available at this time.

Application for leave to file an additional petition for rehearing is therefore denied.

All the Justices concur.