## MIDLAND VALLEY R. CO. v. STATE *et al.*

No. 3709. Opinion Filed January 28, 1913.

Rehearing Denied March 19, 1913.

(130 Pac. 803.)

CARRIERS—Live Stock Shippers—Dipping of Cattle—Compensation—"Public Service." The dipping of cattle in its vats by a railroad company engaged in transporting cattle over its line from points below the quarantine line, to points above the quarantine line, before the same were turned loose in pastures, when such dipping was pursuant to quarantine regulations prescribed by law, is so cognate to and involved in the carriage and delivery of such cattle by the railroad company to patrons along its line as to constitute a part of its public service.

   (a) This service is a public service, within the meaning of the Constitution of this state, and is subject to the superintending power of the state.

   (b) The Corporation Commission has the power, under section 18, art. 9, of the Constitution (section 234, Williams' Ann. Const. Okla.), to fix a reasonable charge to be paid by the patrons to the railroad for such service.

(Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

Proceeding by the State and others against the Midland Valley Railroad Company. From the judgment, the railroad appeals. Affirmed.

· *Edgar A. de Meules* and *Sol H. Kauffman,* for appellant.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for appellees.

WILLIAMS, J.　This appeal seeks to review, Order No. 563, made by the Corporation Commission, wherein it was "ordered that the defendant, the Midland Valley Railroad Company, so long as it engages in the dipping of cattle within the state of Oklahoma, shall for the first dipping charge not exceeding fifteen cents per head; all subsequent dippings not to exceed ten cents per head." Appellant insists that the Corporation Commission was without jurisdiction to make this order.

Section 18, art. 9, of the Constitution, was borrowed from Virginia. See note to section 234, Williams' Ann. Const. Okla. In *Norfolk & Portsmouth Belt Line R. Co. v. Commonwealth,* 103 Va. 289, 49 S. E. 39, it is said:

"If the power of the commission is limited merely to fixing the rate for carriage, and it is without authority so to regulate that service as to render it ineffective, it is obviously wholly inefficacious with respect to this large class of consignees and shippers."

In that case the order of the State Corporation Commission of Virginia, fixing the charge of placing cars in position to be weighed on consignees' or shippers' individual track scales, located on private sidings leading to industries along the line of appellant's railroad, at 25 cents per car for each car, loaded or empty, so placed in position and weighed, was assailed on the ground that said commission had no authority to fix the charge. The court held that the commission had authority to regulate the same.

Cattle transported by the appellant from certain points within the state below the quarantine line, but delivered and turned loose at points within the state above the quarantine line, are required to be dipped pursuant to certain quarantine regulations prescribed by law. It is the custom for the appellant to provide for this dipping prior to said cattle being turned loose at such points of delivery above the quarantine line, and the furnishing of the facilities for the dipping of such cattle by said appellant, therefore, by custom, comes within its duty as a common

carrier; and the order made by the commission is appealable and reviewable in this court.    Section 234, Williams' Ann. Const. Okla.; *Norfolk & Portsmouth Belt Line R. Co. v. Commonwealth, supra.*

The evidence discloses that prior to the making of this order by the commission appellant had been charging 25 cents for the first and fifteen cents for the second dipping, and that its dipping an animal costs less than two cents.

The order of the commission is, in part, as follows:

"The commission finds that the defendant delivers to the Osage Nation approximately 75,000 head of cattle annually, which must be dipped before the owners thereof can permit them to run at large in the pastures north of the quarantine line.    It appears, by request of the shippers, the railroad company established vats and draining pens adjoining their regular unloading or shipping pens, and by this means cattle could be dipped when they were unloaded and delivered to the shipper at less expense and inconvenience to the shipper than to be driven off of the railroad right of way and dipped at private vats, and, in fact, private vats were not available at all places where cattle were desired to be unloaded.

"The evidence also shows that the defendant charges twenty-five cents for the first dipping and fifteen cents for the second, and where cattle are dipped the third time it charges ten cents. The general manager of the defendant was requested to make a complete tabulated statement, which was by agreement to be incorporated into the record, which is as follows:

" 'Statement of Cattle Dipped by Midland Valley Railroad and the Estimated Cost of Dipping, Year Ending June 30th, 1911.

### Cattle Dipped.

|  | Number of Head. |  |
|---|---|---|
| First dip | 76,794 | $19,199.40 |
| Second dip | 20,275 | 3,041.25 |
| Third dip, total | 91,548 | 31,544.80 |

### Cost of Dipping.

| | |
|---|---|
| Cost of material and labor charged to dipping vats and dipping cattle | $ 2,406.07 |
| 10% labor added account supervision | 240.60 |
| 10% labor and account delays to trainmen vats | 240.60 |
| Total material, labor and repairs | $ 2,887.28 |

### Value of Dipping Plants.

| | |
|---|---|
| Nelogany | $ 2,040.49 |
| Big Heart | 836.00 |

| | |
|---|---:|
| Skiatook | 990.31 |
| Blackland | 1,187.94 |
| Myers | 1,825.00 |
| Total cost | $ 6,879.74 |
| Depreciation at 20% | 1,375.95 |
| Interest at 6% | 412.78 |
| Total cost | $ 4,676.01 |

" 'Average cost per head, $.0474.

" 'Accounting Department July 19, 1911.

" 'Correct: F. N. Niles, Asst. Auditor. E. M. Alford, V. P. & G. M.'

"It appears from the evidence in this case that cattle are delivered to the shipper, and, as a matter of convenience, dipping vats have been established by the defendant adjoining its stock pens operated by the railroad company, for which it makes special charges as above set forth.

"If this is a part of common carrier's duties, it can have two objects in performing the service: One to encourage cattle feeders to ship cattle over its lines; and, second, for the profit it derives from the dipping thereof. * * *

"Considering that at times there may not be more than two or three car loads to dip, and the necessity of preparing the dipping vat with the solution for small or large amounts, we are of the opinion that fifteen cents per head for the first dipping and ten cents for each additional dipping is sufficient remuneration to be charged, and will yield sufficient profit to pay all expenses and rebuild the vats new annually. * . * * "

Appellant insists that the order was entered by the commission on the theory that section 8812 of Comp. Laws 1909 applied, and not pursuant to the grant of authority by section 18 of article 9 of the Constitution; and therefore the appellees are bound by that theory, and on that alone may this court sustain the same. That rule has no application in this case.

In *Oklahoma Ry. Co. v. St. Joseph's Parochial School,* 33 Okla. 755, 127 Pac. 1087, it is said:

. "An order, on appeal, will not be vacated if the record shows proper ground to sustain same, though the commission, in entering same, gives a ground therefor not tenable under the law. *Hancock v. Youree et al.,* 25 Okla. 460, 106 Pac. 841."

Appellant insists that it did not have ten days' notice of the time and place, as contemplated by section 234, subd. 3, of Williams' Ann. Const. The record recites that:

"Said complaint having been duly served upon said defendant railroad company, said cause was set down for hearing in the office of the commission at Oklahoma City on the 14th day of June, 1911. And at said date, said cause coming on for hearing before the commission, the following proceedings were had and testimony introduced therein as follows. * * * "

No objection to any defect in said notice having been interposed, but the defendant having appeared and participated in said hearing by cross-examining the witnesses, the appellant waived such notice. The record recites:

"Mr. de Meules: This case was set for hearing on the first day of the last term, at which time we appeared. The complainants not appearing, the commission entered an order continuing the case; whereupon the witnesses for the railroad departed, and it was opened the next day. The complainants appeared from some misunderstanding, and at that time the commission took the testimony of the complainants in the absence of the railroad company. We have a transcript of the evidence, and we would suggest to the commission that the state of evidence is such that we feel that it is only proper that we should be allowed to cross-examine these witnesses. We are here, however, to make what statement we can with reference to the matter now, and would ask at some convenient time that the witnesses be required to appear, so we may cross-examine on some matters. Commissioner Henshaw: Let me see a copy of that testimony. This is in reference to dipping cattle. I remember the case now. The testimony of the witnesses here, as I understand it, is largely a statement of facts, and we can get witnesses today from the agricultural department that know the same as these do, and in that way we can disregard any of the disputed parts of this testimony. I don't care to delay this. case longer than this term, if possible, for the purpose of cross-examining these particular witnesses; but if there is any part of this evidence that you desire to contest, why you can do so, and we will either recall these witnesses, or we will call some other witness from the agricultural department. Proceed with your evidence in the case."

Mr. E. M. Alford, the vice president and general manager of the Midland Valley Railroad Company, was then introduced by appellant, and testified in its behalf.

Nowhere in the record was any objection made on account of any defect in the notice; nor was any continuance asked. There is no merit in this contention. *Hine v. Wadlington et al.*, 27 Okla.

285, 111 Pac. 543; *St. Louis & S. F. R. Co. v. Williams et al.,* 25 Okla. 662, 107 Pac. 428.

The order of the commission is affirmed.

All the Justices concur.