## CHICKASHA COTTON OIL CO. v. LAMB *et al.*

No. 5922.   Opinion Filed June 6, 1916.

(158 Pac. 579.)

1. **APPEAL AND ERROR—Review—Successive Appeals—Law of the Case.** A decision on appeal by this court upon questions of law becomes the law of the case; and, the facts or issues being substantially the same at second trial thereof, such decision is controlling upon the trial court, and is the law of the case in this court upon a second appeal.

2. **SAME.** The issues attempted to be tried in this case at the second trial were only those involved in the record brought here on the former appeal, and were not sufficient to take the case out of the law announced in the first appeal.

(Syllabus by the Court.)

*Error from Superior Court, Custer County;*
*J. W. Lawter, Judge.*

Action by Ellis Lamb and another, doing business under the firm name of Lamb & Tyner, against the Chickasha Cotton Oil Company. Judgment for plaintiffs, and defendant brings error. Reversed.

*A. J. Welch,* for plaintiff in error.

*M. L. Holcomb* and *Norfleet & Shackelford,* for defendants in error.

SHARP, J.   This was an action brought by plaintiffs to recover on an account for medical services rendered by them to one Lindley, an employee of defendant company, in treating a gunshot wound inflicted upon said Lindley in a personal encounter with a trespasser upon defendant company's premises. This is the second time the case has been before this court; it having been reversed and remanded on the first appeal (28 Okla. 275, 114 Pac. 333).

At the second trial plaintiffs again recovered judgment, which defendant now seeks to reverse.

The determination of the different assignments of error involves the single question of whether or not the trial court at the second trial followed the law of the case as set forth in the former opinion of this court. In that opinion, with regard to the admission of certain evidence tending to prove that Widney, manager of the defendant company, had ordered the services, it was said:

"Plaintiffs seek to fix liability upon defendant for their services rendered to the defendant's wounded employee by showing that defendant's manager at Clinton sent for them and requested that they render the services. Over defendant's objection, plaintiffs were permitted to testify that the person who called for them at the time of the accident stated that he had been sent by the president or manager of defendant. There is an entire absence of any other evidence in the record to show that the person who made this statement was in any way the agent of the oil mill or had been sent by its manager. Statements made in the absence of defendant by this person, who is not shown to be defendant's agent, cannot bind defendant, and are objectionable as hearsay testimony. The best evidence as to who sent the messenger for plaintiffs would have been the messenger's testimony.

"Defendant's defense was that its manager had not ordered the services of plaintiffs, and that, if he had done so, he was without authority to bind defendant in the premises. Defendant offered to prove by the manager that he was without such authority; but his testimony relative thereto was rejected by the court. That such testimony was competent seems plain; it bears directly upon the issues of defense made by defendant's answer. The burden was upon plaintiffs, under the issues formed by the pleadings, not only to show that defendant's manager requested them to render the services for which they seek to recover,

but also that he was acting within his authority as the agent of defendant; and evidence by defendant's officer, who knew his authority, was competent to contradict evidence offered by plaintiffs in support of this issue.

"Plaintiffs were also permitted to testify in their own behalf as to a conversation had between them and one Morrison in which Morrison made statements tending to show the admission by the company of its liability, to plaintiffs for their claim. They testified that Morrison had asked them if they were still looking to the company, and, upon being told that they were, said to them that they had better see the oil mill company about standing for any more of the bill; that the company had some money on hand that they expected to pay on plaintiffs' bill, but, before plaintiffs did anything else, they had better see the company, as their bill was much more than the company was expecting anyhow. Morrison was an employee of the company, but the record is silent as to what his authority was. Admission of an agent, in order to be admissible against the principal, must be made as agent, and while he is acting for the principal within his authority; and it must first be shown by competent evidence that such admissions were made in and as a part of the agent's performance of his duties and within the scope of his authority. The rule is stated by Mr. Justice Valentine in *Swenson v. Aultman*, 14 Kan. 273, as follows: 'It is a general rule that the declarations of an agent, in order to bind his principal, must not only come within the scope of his agent's authority, but they must also be made by the agent while he is transacting his principal's business, and be connected therewith as a part of the *res gestae.*' All the essential elements of this rule rendering the statements of Morrison admissible are lacking in the record. The incompetent evidence admitted was prejudicial to defendant. The principal controversy in this case revolves about the issue of fact whether defendant's manager employed plaintiffs or requested their services for the wounded employee. Any statement by Morrison, one of defendant's employees,

to the effect that the company's officers recognized its liability in the premises for a portion of the bill was calculated to weaken the testimony of defendant's manager, denying that he had made any contract with plaintiffs or requested them to render any service, and was calculated to influence the jury in finding their verdict for plaintiffs.

"For the errors in admitting the incompetent testimony the judgment of the trial court must be reversed, and the cause remanded."

Did the trial court, at the second hearing of the case, follow the law as above declared, and have the plaintiffs complied with the requirements therein set forth? We do not so understand. Although Widney was permitted to testify that he did not have authority to order the services of plaintiffs so as to bind the defendant, and in fact did not do so, yet testimony of plaintiffs to the same effect as that admitted in the first trial was received, not only as to the statements made by the messenger when requesting the plaintiffs to treat Lindley, but also as to the conversation had with Morrison. It is true that it was shown in the present case that Morrison was bookkeeper for defendant company, but it is not contended that he had any authority to bind the defendant by his statements, even had they been competent. It was further shown that Lindley, the wounded patient, testified that he heard Widney send for the doctors, but there his testimony stops, and no attempt is made to show Widney's authority to bind the company. Nowhere is there any evidence in the record that when the wound was inflicted upon Lindley, Widney had authority to bind defendant company for the payment of the doctor's services. The cases cited by counsel for defendants in error concerning the incurring of liability by a defendant company, through its officers or agents, for services rendered an injured employee, are not in point;

as all of them deal with facts showing the employee to have been injured in the line of his employment or duty, and not by a trespasser in a personal encounter. Cases might be conceived where a defendant would be responsible for medical treatment to one of its employees who was injured by a trespasser while resisting an attack upon the defendant's property, or while removing such a trespasser therefrom; but when the injury was the result of a fight, personal as between the two combatants, then it is going far to say that the employer of the injured party is responsible for medical treatment simply because an officer thereof may request such treatment. Although Widney denies that he sent a messenger to plaintiffs, yet, if he had in fact done so, that would have been but the fulfillment of a duty owed by him to a suffering human being, and would not of itself render the defendant company liable for the services which might be rendered as the result of such request. It would have been an easy matter for plaintiffs, had they not desired to treat Lindley except upon the responsibility of defendant, to have asked Widney at the time the services were first performed respecting his authority to bind the company, and if he so intended. We can see no distinction between this case and one where an injury is inflicted upon an employee in a fight outside the employer's premises, and the manager of the employer, happening along, sends for a doctor to care for the injured employee.

The evidence upon which the judgment is based in the present appeal is substantially the same as in the former appeal, and does not show authority in the manager of the defendant company to contract on its behalf for medical treatment to an employee injured in a personal combat; nor does it show that he intended to exercise such authority, even had he possessed it.

This court has on numerous occasions held that, where the facts on the second appeal are practically the same as on the first appeal, the decision of the first appeal is the law of the case in all its subsequent stages, and will not be reviewed on the second appeal. *Harper v. Kelly,* 29 Okla. 809, 120 Pac. 293; *Kirby v. Hardin,* 41 Okla. 609, 134 Pac. 854; *Leonard v. Showalter,* 41 Okla. 122, 137 Pac. 346; *St. Louis & S. F. R. Co. v. Clark,* 42 Okla. 638, 142 Pac. 396; *Kingfisher Improvement Co. v. Talley,* 51 Okla. 226, 151 Pac. 873.

We will therefore apply the law as it was declared in the former opinion.

Because of the errors shown, the judgment of the trial court is reversed.

All the justices concur, except THACKER, J., not participating.