### EZELL v. MIDLAND VALLEY R. CO.

No. 9260—Opinion Filed Aug. 13, 1918.

(174 Pac. 781.)

**1. Appeal and Error—Second Trial—Law of Case.**

The law as held in a former appeal of the case becomes the law of the case.

**2. Carriers — Interstate Shipment — Action for Damages.**

In the case of an interstate shipment of cattle, a provision in the contract of carriage, fixing 91 days as time in which action must be brought for damages for a breach of the contract, is legal and binding, and where an action for breach of said contract is brought after the expiration of 91 days the action is barred.

**3. Same.**

Where there is a provision in an interstate contract of shipment of cattle, fixing a time within which action must be brought thereon, the time begins to run from the date of delivery of the cattle at their destination.

**4. Same — Shipment of Cattle—Dipping.**

Under an interstate contract of shipment of cattle, dipping of the cattle is covered in the contract of carriage, and such dipping is not a proper subject of a separate contract.

**5. Appeal and Error—Harmless Error.**

Where it clearly appears that the cause of action is barred by limitation, and the trial court properly sustained such defense, errors, if any, occurring in the trial, are without prejudice.

(Syllabus by Collier, C.)

Error from District Court, Osage County; Chas. B. Wilson, Judge.

Action by H. G. Ezell against the Midland Valley Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

See, also, 62 Okla. 109, 162 Pac. 228.

F. W. Files and Leahy & Macdonald, for plaintiff in error.

O. E. Swan and Grinstead & Scott, for defendant in error.

Opinion by COLLIER, C. This action was commenced by plaintiff in error against defendant in error to recover damages in the sum of $1,792.40, for the loss of cattle by reason of their drinking crude oil, in the pens of defendant at Foraker, Okla., due to the negligence of defendant, and extra labor of plaintiff in error for caring for said cattle caused by said negligence. Hereinafter the parties will be designated as they were in the trial court. This is the third appeal to this court in this case. In the first appeal (36 Okla. 517, 129 Pac. 734) the plaintiff recovered judgment, defendant appealed and cause was reversed, and in said appeal it was held that the plaintiff was liable, if liable at all, as a common carrier, and not upon an independent contract to dip the cattle. Subsequent to the remanding of the case, and before the last trial, defendant pleaded the terms of said contract of shipment entered into between plaintiff and Missouri, Kansas & Texas Railway Company at Ft. Worth, Tex., which said contract contained the following provision:

"No suit shall be maintainable unless instituted within ninety-one days after happening of injuries, delay or delays complained of in any statute of limitations to the contrary notwithstanding"

—and alleged failure of plaintiff to comply therewith, and pleaded that the contract of dipping was embraced within the contract of shipment with the initial carrier. Plaintiff in reply pleaded a contract of shipment entered into between plaintiff and defendant at Nelagony, Okla., for the transporting of said cattle from Nelagony to Foraker, Okla., and that said contract superseded the initial contract entered into at Ft. Worth, and that therefore the shipment was an intrastate shipment, and that the provision in the initial contract that action on said contract must be brought in 91 days was invalid. The case was again tried, and resulted in judgment for the plaintiff, defendant appealed, and the case was again reversed. See Midland Valley R. Co. v. Ezell, 62 Okla. 109, 162 Pac. 228. The case came on for trial a third time on March 27, 1917, under the issues as above framed. The evidence discloses that the cattle were transported from Nelagony by the Missouri, Kansas & Texas Railway Company, and there delivered to the defendant, and by defendant transported to their destination; that the plaintiff was required at Nelagony to enter into another contract for the transportation of said cat-

tle from Nelagony to Foraker, but without compensation therefor, other than that stipulated in the initial contract for the carriage of the cattle from Ft. Worth to Foraker. The further uncontradicted evidence established the execution of the respective contracts of shipment pleaded, and the averments of the petition as to the dipping and treatment of the cattle in the dipping pens of the defendant at Foraker, Okla., and the drinking of oil by the cattle, and the value of the cattle, and in addition it was stipulated and agreed by the counsel for plaintiff and counsel for defendants:

"That the cattle in question drank the crude oil, as alleged in the petition, on the 17th day of October, 1908, and were on that date delivered into the possession of plaintiff, and some of the cattle died immediately thereafter, and others died from time to time up to and within ten days of the commencement of this action, and that this action was commenced on the 10th day of April, 1909; that in all 93 head of cattle died; the first of said cattle died on the 1st day of October, 1908, and the last of said cattle died on the 1st day of April, 1909; that the cattle that died lingered along in a sickly condition during the winter and until the time they died."

Thereupon the defendant moved the court for judgment on the evidence and stipulation of parties. The court rendered judgment:

"That a contract of shipment entered into at Ft. Worth, Tex., governed in the case, and included the contract for dipping of said cattle, and, this action not having been commenced within 91 days from the date of alleged dipping of said cattle, plaintiff cannot recover herein because of limitations of said contract of shipment from Ft. Worth, Tex., to Foraker, Okla., took the case from the jury, and sustained the motion of, and rendered judgment for, defendant on the evidence, to which defendant duly excepted."

Motion was made for a new trial, which was overruled, exception saved, and error brought to this court.

There are several assignments of error, but in the view we take of the case we deem it unnecessary to consider the case from any other viewpoint than as to whether or not the action was barred by the provision of limitation contained in the initial contract, as to the time in which the action must be brought.

It is earnestly contended by plaintiff that the action is upon an independent contract to dip the cattle, and with this contention we cannot agree. In the second appeal in this case (62 Okla. 109, 162 Pac. 228) it is held:

"A railroad company engaged in transporting cattle from points below the quarantine line to points above the quarantine line, pursuant to regulations prescribed by law, is involved in the carriage and handling of said cattle by said railroad company, and is a part of its public service, and therefore clearly embraced within its contract of carriage."

In Midland Valley Ry. Co. v. State, 35 Okla. 672, 130 Pac. 803, it is held:

"The dipping of cattle in its vats by a railroad company engaged in transporting cattle over its line from points below the quarantine line to points above the quarantine line, before the same were turned loose in pastures, when such dipping was pursuant to quarantine regulations prescribed by law, is so cognate to and involved in the carriage and delivery of such cattle by the railroad company to patrons along its line as to constitute a part of its public service."

In M., K. & T. Ry. Co. v. Skinner, 61 Okla. 189, 160 Pac 875, it is held:

"1. 'Dipping cattle' by a railway company in compliance with quarantine regulations established by law is a part of the service required by the shipping contract, and the question of negligence in the performance of this service must be measured by the terms of that contract.

"2. In an action for damages against the railway company for negligence or failure to water cattle before dipping them, in compliance with established quarantine regulations, although the plaintiff contends that the contract for dipping was an independent, oral contract, exclusive of shipping contract, when offered in evidence in support of allegations or answers set up, such contract as a defense to the action is prejudicial error."

It is also earnestly contended by plaintiff that the contract entered into between plaintiff and defendant at Nelagony, Okla., superseded the original contract of shipment entered into at Ft. Worth, Tex., and that therefore said provision in the contract as to the time in which an action is to be brought is not applicable, and with this contention we cannot agree. The shipment being an interstate shipment, the provision in the initial contract of shipment that an action for breach of such contract must be brought within 91 days after a breach thereto is legal and binding.

In M., K. & T. Ry. Co. v. Ward, 244 U. S. 383, 37 Sup. Ct. 617, 61 L. Ed. 1213, was involved an interstate shipment of cattle over several lines of railway, and it was held:

"The terms of the original bill of lading for an interstate shipment under the act of June 29, 1906 (34 Stat. at L. 584, c. 3591 [Comp. Stat. 1916, § 8563]), which governs the entire transportation, could not be altered by a second bill of lading issued by a connecting carrier, since the latter was already bound to transport the shipment at the rate and upon the terms named in the original bill of lading, and the acceptance by the shipper of the second bill was therefore without consideration and was void. Any limitation of liability, contained in a contract made by an initial carrier of an interstate shipment for the benefit of itself and connecting carriers which would be valid in its own behalf, under the Carmack Amendment of June 29, 1906 (34 Stat. at L. 593, c. 3591, § 7 [U. S. Comp. Stat. Supp. 1911, p. 1304]), to the act of February 4, 1887 (24 Stat. at L. 386, c. 104), § 20, making the initial interstate carrier liable for the loss or damage occurring anywhere en route, will likewise inure to the benefit of any succeeding carrier in the chain of transportation when sued for the loss or damage. The connecting carrier is not relieved from liability by the Carmack Amendment, but the bill of ladihg required to be issued by the initial carrier upon an interstate shipment governs the entire transportation, and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid. 'The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act as measured by the original contract of shipment, so far as it is valid under the act.' There is, however, a further and controlling consideration. We are dealing with a clause in a bill of lading issued by the initial carrier. The statute cast upon the initial carrier responsibility with respect to the entire transportation. The aim was to establish unity of responsibility (Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186, 199-203, 55 L. Ed. 167, 179-181, 31 L. R. A. [N. S.] § 7, 31 Sup. Ct. Rep. 164; New York, P. & N. R. Co. v. Peninsula Produce Exch., 240 U. S. 34, 38, ante, 230, 36 Sup Ct. Rep. 230 [60 L. Ed. 511, L. R. A. 1917A, 193]), and the words of the statute are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation, which, as defined in the federal act, includes delivery. * * * But the provision question is not to be construed in one way with respect to the initial carrier, and in another with respect to the connecting or terminal carrier As we have said, the latter takes the goods under the bill of lading issued by the initial carrier, and its obligations are measured by its terms (Kansas City Southern R. Co. v. Carl, 227 U. S. 639, 648, 57 L. Ed. 683, 686, 33 Sup. Ct. Rep. 391; Southern R. Co. v. Pre-

scott, 240 U. S. 632. 637, ante, 469, 36 Sup. Ct. Rep. 469 [60 L. Ed. 836]); and if the clause must be deemed to cover a case of misdelivery when the action is brought against the initial carrier, it must equally have that effect in the case of the terminal carrier, which in the contemplation of the parties, was to make the delivery. The clause gave abundant opportunity for presenting claims, and we regard it as both applicable and valid. But the parties cannot waive the terms of the contract under which shipment was made pursuant to the federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed. That the service is performed wholly in one state can make no difference if it is a part of interstate carriage. "The transportation of live stock,' said this court in Covington Stockyards Co. v. Keith, 139 U. S. 128, 35 L. Ed. 73, 11 Sup. Ct. Rep. 461, in treating of the duties of common carriers, irrespective of the acts to regulate commerce, 'begins with their delivery to the carrier to be loaded upon its cars, and ends only after the stock is unloaded and delivered, or offered to be delivered, to the consignee. * * * It is the character of the service rendered, not the manner in which goods are billed, which determines the interstate character of the service'."

The law was declared in the former appeal in this case, that the defendant held the cattle as a common carrier, was sued as a common carrier, and that its liability, if any, was that of a common carrier, and that holding is the law of the case. Oklahoma City Electric, Gas & Power Co. v. Baumholl, 21 Okla. 503, 96 Pac. 758; State Bank v. City National Bank, 26 Okla. 801, 110 Pac. 910; Harding v. Gillett, 25 Okla. 199, 107 Pac. 665; Leonard v. Showalter, 41 Okla. 122, 137 Pac. 346; Harper v. Kelly, 29 Okla. 809, 120 Pac. 293; Marth v. Kingfisher Commercial Club, 44 Okla. 514, 140 Pac. 1047, Ann Cas. 1917E, 235; Chickasha Cotton Oil Co. v. Lamb, 58 Okla. 22, 158 Pac. 579.

In M., K. & T. Ry. Co v Harriman, 227 U. S. 657, 33 Sup. Ct 397, 57 L. Ed. 690, it is held:

"1.. The Carmack Amendment has withdrawn the determination of validity of all stipulations in interstate shipping contracts from state law and legislation. Under that amendment the validity of a provision that suit must be brought within a specified per-

iod is a federal question to be settled by the general common law.

"2. The liability imposed by the Carmack Amendment is that of the common law, and it may be limited or qualified by a special contract with the shipper, limiting it in a just and reasonable manner, except exemption from loss or responsibility due to negligence; and so held as to a stipulation that suit be brought within 90 days from the happening of the loss.

"3. Limitation of the time within which to bring actions is a usual and reasonable provision, and there is nothing in the policy of the Carmack Amendment that is violated thereby."

In St. L. & S. F. Ry. Co. v. Wynn, 54 Okla. 482, 153 Pac. 1156, it is held:

"In an action in damages upon a contract for an interstate shipment of live stock, section 9, art. 23. of the Constitution of this state has no field of operation." St. L. & S. F. Ry. Co. v. Zickafoose, 39 Okla. 302, 135 Pac. 406; C., R. I. & P. Ry. Co. v. Craig, 59 Okla. 18, 157 Pac. 87.

It is earnestly contended by the plaintiff that, if the provision of the contract as to the time in which action thereupon must be brought is legal, the running of the 91 days began when the last cattle died, and with this contention we cannot agree, as we are impressed that the 91 days began to run from the delivery of the cattle to the shipper at Foraker, which was subsequent to the dipping and treatment of the cattle, which resulted in their death.

In Kansas, Pacific R. Co. v. Mihlman, 17 Kan. 224, in an opinion by Judge Brewer, it is held:

"That the statute begins to run from the date of the wrongful act without reference to when the damages actually accrue."

In Trust Co. v. Wolcott, 5 Kan. App. 473, 47 Pac. 8, it is held:

"A cause of action against an abstractor of titles for giving a wrong certificate of title accrues at the date of the delivery, and not at the time the negligence is discovered or consequential damages arise."

In Raynor v. Mintzer, 72 Cal. 585, 18 Pac. 82, it is held:

"But, however this may be, the general rule is that a cause of action for tort arises when the wrongful act, causing damage, is done, and the statute of limitations then begins to run against it. The damages occasioned by the act may not all have been sustained at that time, but that fact does not postpone the running of the statute."

In Moore v. Juvenal, 92 Pa. 484, it is held:

"Where the declaration, as in this case, alleges a breach of duty and a special consequential damage, the breach of duty, and not the consequential damage, is the cause of action, and the statute runs from the date of the former, and not from the time the special damage is revealed or becomes definite."

As the action was barred by the provision contained in the initial contract of carriage, as to the time in which the action thereon should be brought, it is entirely unnecessary to consider any other of the many questions raised by the record, as any erroneous rulings that may have been made by the trial court other than in regard to said limitation would be harmless error.

The court did not err in rendering judgment for the defendant, and such judgment is affirmed.

By the Court: It is so ordered.