**SCHAFF, Rec., v. HUDGINS et al.**

No. 12360—Opinion Filed Sept. 5, 1922.

Rehearing Denied Dec. 11, 1923.

(Syllabus.)

**1. Carriers — Dipping Cattle — Ordinary Care—Jury Question.**

A common carrier, undertaking to dip cattle, pursuant to the quarantine regula-tions of the Statte Board of Agriculture and the Bureau of Animal Industry of the Department of Agriculture in the United States, owes the duty to the owner of said cattle to exercise ordinary care in dipping the same. Whether or not such carrier in so dipping said cattle, exercised ordinary care, is a question of fact for the jury; and where there is competent evidence which will reasonably sustain the verdict of the jury, this court will not disturb such verdict.

**2. Trial — Sufficiency of Instructions — Refusal of Requests.**

When an instruction is given which fairly contains the substance of an instruction refused, the refusal of such instruction does not constitute reversible error.

**3. Appeal and Error — Review — Sufficiency of Evidence.**

In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

**4. Interest — Allowance — Unliquidated Damages.**

Interest cannot be recovered upon unliquidated damages where it is necessary for a judgment or verdict to be had in order to ascertain the amount of same.

**5. Same—Modification of Judgment.**

Record examined, and the judgment of the trial court modified and affirmed.

Error from District Court, Tulsa County; A. C. Brewster, Assigned Judge.

Action by S. H. Hudgins and another against Charles E. Schaff, Receiver of Missouri, Kansas & Texas Railway Company, for damages to shipment of cattle. Judgment for plaintiffs, and defendant brings error. Modified and affirmed.

M. D. Green and H. L. Smith, for plaintiff in error.

McGuire & Marshall and A. R. Rucks, for defendants in error.

JOHNSON, J. S. H. Hudgins and William Blair, copartners, doing business under the name and style of Hudgins & Blair, commenced an action in the district court of Tulsa county, as plaintiffs, against the defendant, Charles E. Schaff, as receiver of the properties of the Missouri, Kansas & Texas Railway Company, to recover the sum of $13,780 as damages to a shipment of 690 head of cattle, shipped by the plaintiffs from White's Ranch, Tex., to Osage, Okla., alleged to be due to careless and negligent handling and dipping of said cattle by the defendant.

The plaintiffs' petition, an amended petition, charged, in substance, that on about the 8th day of May, 1916, the plaintiffs delivered said cattle to the Gulf & Interstate Railway Company at White's Ranch, Tex., in first-class order and condition, the said cattle to be transported and delivered over said line of railway and its connecting carriers to Osage, Okla., the point of destination: and that they were transported by the Gulf & Interstate Railway Company from White's Ranch to Beaumont, Tex., and over its connecting carrier, the Gulf, Colorado & Santa Fe Railway Company, from Beaumont, Tex., to Hodge, Tex., near Fort Worth, Tex., and there delivered to its connecting carrier the defendant, C. E. Schaff, as receiver of the Missouri, Kansas & Texas Railway of Texas, and said cattle were then and there accepted by said defendant for transportation over the line of railway of the Missouri, Kansas & Texas Railway to Osage, Okla., the point of destination. That the plaintiffs had paid the defendant the freight and expense charges, including the dipping of said cattle.

The paragraphs of the plaintiffs' petition charging negligence and the amount of damage sustained by the plaintiffs were as follows:

"Plaintiffs allege that when said cattle reached Hodge, Texas, the defendant, as receiver of said railway companies, took complete charge and possession of said cattle for the purpose of transporting them to destination, and for the purpose of unloading, holding, and dipping said cattle, in the course of said transportation, in accordance with the laws and rules and regulations of the Department of Agriculture governing the same; that said defendant receiver unloaded said cattle at Denison, Tex., for feed and water, and reloaded and transported said cattle to Muskogee, Okla., where they arrived on the 10th day of May, 1916, and where the defendant receiver unloaded said cattle into the defendant's stock pens for the purpose of holding and dipping said cattle; that on the 11th day of May, 1916, the defendant receiver dipped plaintiffs' cattle in an arsenical solution in the defendant's stock pens and vats at Muskogee, Okla., and that on May 17, 1916, the defendant receiver again dipped plaintiffs' cattle in an arsenical solution in the defendant's stock pens and vats in said Muskogee, Okla., and on said last date loaded said cattle out for Osage, Okla., the point of destination, and that such of said cattle that had not died at Muskogee, Okla., arrived at destination May 17, 1916 the defendant receiver charged plaintiffs the sum of one hundred and seventy dollars and twenty-five ($170.25) cents for dipping said cattle and the sum of three hundred and thirty (330) dollars for feeding said cattle, and the sum of one hundred and ten ($110) for holding said cattle in defendant's pens for dipping at Muskogee, Okla., and which amounts these plaintiffs have paid to the defendant.

"Plaintiffs would show to the court that the defendant receiver had and held complete charge and management and possession of said cattle at all times while they were in Muskogee, Okla.; and plaintiffs further allege that the defendant receiver failed and neglected to furnish proper and adequate facilities for holding, handling, feeding, watering and dipping said cattle at Muskogee, Okla., and failed to use ordinary care and diligence in dipping said cattle, but that the defendant receiver, his agents, representatives and employes were careless and negligent in providing such facilities and in dipping said cattle in the following particulars: That the defendant's stock pens in which plaintiffs' cattle were placed at Muskogee, Okla., were insufficient in number and capacity for holding and handling said cattle, as a result of which said cattle were crowded and jammed in said pens and were unable to lie down and obtain proper rest; that said pens were not properly and adequately equipped with water troughs and feed racks to accommodate the number of cattle placed therein; that said cattle were not given sufficient feed and water while in said pens; that said pens were not provided with any character of sheds or shade and said cattle were forced to stand in said pens in the hot sun before and after they were dipped; that said defendant receiver failed and neglected to give said cattle an opportunity to drink sufficient water to quench their thirst prior to their being dipped and that by reason of their crowded and jammed condition in said pens and standing in the sun, said cattle were in a heated ad exhausted condition prior to their being dipped; that the defendant receiver, his agents, representatives, and employes, were careless and negligent in failing to test the arsenical solution in which said cattle were dipped; that the dipping bath in which said cattle were dipped was much stronger and more poisonous than required by the rules and regulations of the Department of Agriculture and of the Bureau of Animal Industry or necessary to kill the ticks on said cattle and was greatly injurious to said cattle when dipped therein: that such fact was well known to the defendant receiver, or could have been ascertained by him by use of ordinary care and diligence: that by reason of the heated exhausted and thirsty condition of said cattle when dipped, said cattle drank great quantities of said dipping bath while being dipped and were thereby poisoned and injured.

"Plaintiffs allege that by reason of the carelessness and negligence of the defendant receiver, his agents, representatives, and

employes, as above alleged, and as the proximate result thereof, plaintiffs' said cattle were greatly injured and damaged and many of said cattle died as a result of such injuries; that as a result of such mistreatment and resulting injuries, eight (8) head of said cattle died at Muskogee, Okla., while in the defendant's possession, and which said eight (8) head of cattle were then and there of the reasonable market value of fifty ($50) dollars per head, or of the aggregate value of four hundred ($400) dollars; that by reason of such mistreatment and resulting injuries, sixteen (16) head of cattle were dead in the cars upon their arrival at Osage, Okla., on May 18, 1916, as aforesaid and which said sixteen (16) head of cattle were then and there of the reasonable market value of fifty (50) dollars per head; or the aggregate value of eight hundred ($800) dollars; that by reason of such mistreatment and injuries, seventy-four (74) head of said cattle died after being unloaded at Osage Okla., and after being placed in said pasture, and which said seventy-four (74) head of cattle were of the reasonable market value of fifty ($50) dollars per head or of the aggregate vcalue of thirty-seven hundred ($3,700) dollars, at Osage, Okla. Plaintiffs allege that the remainder of said cattle, five hundred and ninety-two (592) head, were seriously and permanently injured, in that said cattle were unreasonably gaunted and emaciated and depreciated in flesh and were sick and in a run-down condition upon their arrival at destination; and that by reason of such injuries said cattle were prevented from taking on flesh and fat as readily as they would have done but for such injuries; that each and all of said cattle were injured and damaged to the extent of fifteen ($15) dollars per head; that is to say, that the reasonable market value of said five hundred and ninety-two (592) head of cattle upon their arrival at destination, Osage, Okla., in their injured condition, was then and there thirty-five ($35) dollars per head but that had said cattle arrived at destination without having received such injuries as herein alleged they would have been then and there of the reasonable market value of fifty ($50) dollars per head."

The defendant's answer pleaded a general denial after which it alleged as follows:

"Further answering, defendant states that he received from his connecting carrier, Chas. E. Schaff, as receiver of the properties of the Missouri, Kansas & Texas Railway Company of Texas, at point of connection being Red River, the boundary line between Oklahoma and Texas, a shipment of cattle shipped by Hudgins & Blair from White's Ranch, Tex., consigned to Drumm Commission Company, Osage, Okla. and defendant states that said shipment was received and forwarded by him under virtue of the terms of a written contract of shipment, a copy of which is attached hereto,

marked 'Exhibit A,' and made a part hereof.

"Further answering defendant states that by the terms of said contract, it was provided that in the event of loss or damage to said shipment, the value thereof should not exceed $50 per head and defendant states that even if plaintiffs are entitled to recover, which, however, is denied, that their recovery in no event should exceed $50 per head wholly lost or a proportionate part thereof for any damage or injury.

"Further answering, defendant states that by the terms of paragraph numbered 'first' of said contract it was provided that the provisions of said contract should inure to the benefit of succeeding carriers and that each carrier should be liable only for loss or damage occurring on its own line.

"Further answering, defendant states that by the terms of paragraph numbered 'second' in said contract it was provided that the carriers would not transport said shipment by any particular train or in time for any particular market or otherwise than with reasonable dispatch.

"Further answering, defendant states that by the terms of paragraph numbered 'third' in said contract it was provided that the carrier should not be liable for loss, delay, or damage to said shipment due to the act of God, the elements, the authority of the law, the act or default of the shippers, or their agents, or unlawful acts of parties not in the employ of the carrier, or for any loss, damage, or delay not due to the negligence of the carrier and that the negligence of the carrier would not be presumed, but must be established.

"Further answering, defendant states that by the terms of paragraph numbered 'fourth' in said contract, it was provided that the carrier would not be liable for loss, damage, or delay caused by the enforcement or attempted enforcement by law officers of quarantine regulations, either state or federal, whether such officers acted lawfully or unlawfully and that the carrier should not be liable for any mistake or inaccuracy in any information furnished by the carrier or its employes or officers to the shippers as to such quarantine regulations.

"Further answering, defendant states that by the terms of paragraph numbered 'fifth' of said contract it was provided that the shippers should hold the carriers harmless from any expense they may be put to or damages they may be required to pay by reason of the introduction of the live stock covered by said live stock contract into any place against the quarantine or other laws of such place.

"Further answering, defendant states that by the terms of paragraph numbered 'seventh' in said contract it was provided that if any of the provisions therein should be adjudged to be void, that then the remaining provisions or parts of provisions should not

be affected thereby, but should be valid and enforceable.

"Further answering, defendant states that by the terms of said contract it was provided that the signature of the shippers or their agents should be conclusive evidence that they fully undestood and assented to all of the provisions and conditions therein.

"Further answering, defendant states that even if said shipment was injured or damaged as alleged in plaintiffs' amended petition, that the plaintiffs were guilty of negligence and carelessness which contributed to said injuries and damage.

"Further answering, defendant states that heretofore, to wit, on December —, 1917, the plaintiffs herein brought suit against the defendant and against C. E. Schaff, as receiver of the properties of the Missouri, Kansas & Texas Railway Company of Texas. in the district court for Harris county, at Houston, Tex., for $13,780 damages based on the same identical cause or causes of action as set up in plaintiffs' amended petition in this suit, and that said suit is still pending in said court and undetermined, and bears court number 96560 therein, and defendant therefore states the plaintiffs are now barred from maintaining this action in this court, and that this action should be abated."

The cause was tried to the court and jury and resulted in a verdict and judgment in favor of the plaintiffs in the sum of $——. To reverse which judgment, this proceeding in error regularly commenced.

The defendant's petition in error contained 20 specifications of error:   (1)   The court erred in overruling the defendant's demurrer to evidence.   (2)   and (3)   The court erred in sustaining objection to evidence offered by the defendant.   (4)   The court erred in overruling the objection of the. defendant to testimony of the plaintiffs. Specifications numbered from (5) to (11), inclusive, error of the court in refusing to give the defendant's requested instructions.   Specifications (11) to (15), inclusive, the court erred in giving instructions.   Specification (16), the court erred in refusing to sustain defendant's motion to exclude from the consideration of the jury that portion of the argument of plaintiffs' counsel to the jury reading as follows:   "Railroad employes always make records, and always make them favorable to the railroad company."   Specifications (17) and (18), court erred in overruling defendant's motion for new trial. (19) Court erred in refusing to render judgment against the plaintiffs and in favor of the defendant.   (20)   Court erred in rendering judgment in favor of the plaintiffs and against the defendant.

Counsel for the defendant argue in their brief the foregoing assignments of error

under nine propositions, which are as follows:

"The shipment being one moving in interstate commerce, covered by a through written shipping contract issued at point of origin, the rights and liabilities of the parties depend on federal legislation, the shipping contract and common-law rules as applied in the federal courts, and the trial court erred in overruling defendant's demurrer to the evidence and in refusing to instruct the jury to return a verdict in favor of the defendant, and in giving to the jury its instruction No. 1.   (Specifications of error 1, 5, and 12.)

"(2)   The trial court erred in refusing to instruct the jury in accordance with instructions Nos. 5, 15, 16, and 17, requested by the defendant.   (Specifications of error 6, 9, 10, and 11.)

"(3)   The trial court erred in giving to the jury its instruction No. 3.   (Specification of error 14.)

"(4)   The trial court erred in refusing to permit the witness, Dr. A. H. Denham, to answer the following question, propounded to him by the defendant, as quoted below. (Specification of error 2.)

"(5)   The trial court erred in sustaining the objection of the plaintiffs to the question quoted below, propounded by the defendant to the witness, Dr. L. T. Richards. (Specification of error No. 3.)

"(6)   The trial court erred in giving to the jury instruction No. 7.   (Specification of error 15.)

"(7)   The trial court erred in refusing to sustain the .defendant's motion to exclude from the consideration of the jury that portion of the argument of plaintiffs' counsel to the jury as follows:   'Railroad employes always make records, and always make them favorable to the railroad company.'   (Specification of error 17.)

"(8)   The verdict of the jury was excessive, and the trial court erred in rendering judgment against the defendant for interest.   (Specifications of error 1, 17, 18, 19, and 20.)

"(9)   The trial court erred in overruling the defendant's motion for a new trial and in rendering judgment against the defendant.   (Specifications of error 18, 19, and 20.)"

We think that the questions of law raised by the defendant and discussed in their brief under proposition one, supra, are decisive of this appeal. They say that "the rights and liabilities of the parties depend on federal legislation, the shipping contract, and common-law rules as applied in the federal courts, and the trial court erred in overruling defendant's demurrer to the evidence, and in refusing to instruct the jury

to return a verdict in favor of the defendant, and in giving to the jury its instruction No. 1."

Plaintiff in error introduced in evidence his freight tariff No. 3942-J, which contained, among others, the following provisions:

"Provisions for dipping shipment of cattle * * * Muskogee and price charged for such services. * * * Dipping cattle * * * at Muskogee. * * * Vats for dipping are located on the M., K. & T. Ry. * * * at Muskogee, Okla., and shipments destined to or passing through (in direct line of transit) either of these points may be dipped as required by the quarantine rules and regulations of the Bureau of Animal Industry of the Board of Agriculture of the state of Oklahoma. A charge of twenty-five cents per head will be assessed for dipping, and includes the cost of the necessary material and labor, which will be furnished by this company. The time limit within which to dip and forward shipments of cattle is fifteen days. * * * A charge of $5 per car will be assessed for the dipping in transit privilege in addition to the published through rate from the point of origin to the destination. Any dipping, loading, unloading at stock yards, feeding or bedding charges, also foreign line shipping charges, will be added to the through rate."

Plaintiff in error admits in his brief, and he so pleads, and the undisputed evidence shows, that the shipment of cattle in question from White's Ranch, Tex., to Osage, Okla., was an interstate shipment from quarantined territory to clean territory, and that such shipment was not permitted to be transported to destination unless and until said cattle had been given at least two dippings under the supervision of a government inspector; that the plaintiff in error received and accepted said cattle at the Oklahoma state line for transportation to Osage under such interstate through shipment contract and transported said cattle on to Muskogee under and upon way bills providing: "Stop this car Muskogee for dipping under government supervision."

Mr. Blair testified that the cattle were crowded in the pens at Muskogee and were held in the pens during the interval of six or seven days between dipping in a crowded condition when the weather was hot, said pens not being provided with any character of shade and the facilities for watering being inadequate. He also testified that the cattle were thirsty, and that he saw them drink the solution as they went through the vat, and that the vat and draining pens were so constructed that pools of the dipping solution were permitted to form in the dipping pen, and that the thirsty cattle were permitted to drink the solution.

Dr. Morgan testified that the two steers posted by him died, in his judgment, from arsenical poisoning. John Skinner and John Stark testified that, after the steers were unloaded at Osage and started on their way to the pasture and were permitted to drink water, great numbers of the cattle died immediately following the drinking of the water, and otherwise described the symptoms of the dying steers, which would indicate that they had been poisoned; and Prof. De-Barr testified that he examined the stomach of one of the steers in this shipment, dipped at Muskogee, and that it contained sufficient arsenic to kill the animal.

It is admitted by the defendant that the plaintiffs paid the defendant the tariff charges "for the facilities furnished and the services rendered by the defendant while the animals were at Muskogee."

This as we have seen, was an interstate shipment of live stock from a point below the quarantine line in Texas to clean territory above the quarantine line in Oklahoma, which the defendant, as receiver of the M., K. & T. Ry. Company, a connecting carrier, received at the state line and transported from that point the shipment over its line to Muskogee, where the cattle were unloaded by the employes of the defendant into its stock pens, and the cattle were handled and dipped in the dipping vats of the defendant under the supervision of the federal quarantine officer. And the employes of the defendant handled the cattle after the dipping, replacing them in the stock pens of the defendant and reloading them in the cars of the defendant. And such of the cattle as survived were transported by the defendant to Osage, Okla., and there delivered to the plaintiffs.

The position taken by the defendant seems to be, broadly stated that in these circumstances the defendant could not be held liable for any injury sustained to the cattle by the plaintiffs in any event, because the federal law required that the cattle be dipped, and that the defendant was relieved by the federal law from the common-law liability of a common carrier, that of insurer.

The latter proposition, that the defendant in these circumstances was relieved from the liability of insurer, as it existed at common law, is true. And this court has so held in the case of M., O. & G. Ry. Co. v. French 52 Okla. 222, 152 Pac. 591. This court sated in syl. para. 3 as follows:

"By the Carmack amendment to the Interstate Commerce Act (Act Cong. Feb. 4, 1887, c. 104, sec. 20, 24 Stat. 386), as amended by Act June 29, 1906, c. 3591, sec. 7, 34 Stat. 595 (U. S. Comp. St. 1913, sec. 8592.

pars. 11, 12), Congress has relieved carriers of interstate shipments from the liability of insurers, as it was at common law, and the liability imposed on such carriers is limited to any loss, injury, or damage caused by them, or by a succeeding carrier to whom the property may be delivered, and plainly implies some default in it, some negligence on the part of the initial carrier, or some connecting line over which the property is transported."

The authorities cited by the defendant sustain the theory that the defendant could not be held liable in the instant case as common carrier.

In the instant case the plaintiffs' petition does not seek by the allegations and averments thereof to hold the defendant liable as insurer, and no such contention was made upon the trial of the cause, and the trial court, by the instructions to the jury, limited the defendant's liability alone to the failure of the defendant and his employes to exercise ordinary care in the handling of the livestock in its stock pens and dipping vats and draining pens, and in watering and feeding the cattle and in overcrowding them in the pens. Such was the negligence charged by the plaintiffs in their petition, and to which the testimony of the plaintiffs was directed upon the trial.

This question has frequently been before this court for determination, and in each instance was decided adversely to the defendant's contention. In the case of Midland Valley R. Co. v. State et al., 35 Okla. 672, 130 Pac. 803, in an opinion by Williams, J., the court stated in the syllabus as follows:

"The dipping of cattle in its vats by a railroad company engaged in transporting cattle over its line from points below the quarantine line to points above the quarantine line, before the same were turned loose in pastures, when such dipping was pursuant to quarantine regulations prescribed by law, is so cognate to and involved in the carriage and delivery of such cattle by the railroad to patrons along its line as to constitute a part of its public service."

In M., K. & T. R. Co. v. Williamson, 75 Okla. 36, 180 Pac. 961, this court stated in syl. para. 2 of the opinion as follows:

"A common carrier, undertaking to dip cattle pursuant to the quarantine regulations of the State Board of Agriculture and the Bureau of Animal Industry of the Department of Agriculture of the United States, owes the duty to the owner of said cattle to exercise ordinary care in dipping the same."

In M., K & T. R. Co. v. Skinner, 61 Okla. 189, 160 Pac. 875, this court stated in syllabus para, 1 as follows:

"Dipping cattle by a railway company in compliance with quarantine regulations established by law is a part of the service required by the shipping contract, and the question of negligence in the performance of this service must be measured by the terms of that contract."

Ezell v. Midland Valley R. Co., 73 Oklahoma, 174 Pac. 781; Midland Valley R. Co. v. Ezell, 62 Okla. 109, 162 Pac. 228.

We think the instant case comes clearly within the rule announced by the court in the cases, supra, and we do not hesitate to adhere thereto.

Propositions Nos. 2, 3, and 6 argued by counsel for defendant in their brief go to the question of requested instructions refused and instructions given by the court to the jury. We have carefully examined the instructions complained of, and from such examination are convinced that the criticisms of counsel are without merit. Requested instructions Nos. 5, 15, 16, and 17, which were refused by the court, were substantially covered by instructions given by the court, and, therefore, no error was committed in refusing to give same.

The questions covered by the requested instructions of the defendant that were refused by the court were submitted to the jury by the court in its instructions which were as follows:

"Instruction No. 16. The court instructs the jury that the mere fact that some of said animals were found dead or injured, either at their final destination or while en route does not raise a presumption of negligence on the part of this defendant but that negligence is a matter of proof which must be established by the plaintiffs, by a fair preponderance of evidence.

"Instruction No. 17. The court instructs the jury that the carrier is not liable for death of, or injury to, animals during transportation, due to natural causes or due to any inherent vice, weakness, disease or natural disposition of such animals, and that mere proof that certain animals died or were injured, after delivery to the carrier and before the end of transportation, is not sufficient to establish liability of a carrier but the evidence must show further that the loss was the proximate result of the negligence of the carrier, and that unless it is so shown the carrier is not required to show that the loss was not caused by its negligence, nor is it required to make any proof whatever under such circumstances."

"Instruction No. 4. You are instructed that the law required that plaintiffs' cattle should be dipped in an arsenical or some similar solution, and there can be no liability on the part of the defendant as receiver of the properties of the Missouri, Kan-

sas & Texas Railway Company arising from the mere fact of the dipping."

"Instruction No. 15. The court instructs the jury that under the quarantine regulations promulgated by the United States government, it was required that said shipment of live stock be given at least two dippings in arsenical solution, tested and approved by representatives of the United States Department of Agriculture, Bureau of Animal Industry, before being transported to Osage, Okla., and if in the enforcement or attempted enforcement by the officers or inspector of the government, the cattle described in plaintiffs' petition were dipped or otherwise treated under the supervision of such governmental officers or inspectors, so as to comply with such quarantine regulations prior to the delivery of said shipments at Osage, Okla., this defendant would not be in any wise responsible or liable for injuries or damages resulting to such cattle for such dipping process or quarantine enforcement and if you believe and find from the evidence that such cattle died or were damaged as the proximate result of such dipping or quarantine enforcement by such government officers, the defendant would not be liable therefor; and your verdict should be for the defendant and against the plaintiffs."

It seems to us that these instructions fully and fairly submitted the defendant's contention, and there was no error committed by the court in refusing the requested instructions of the defendant. The rule adhered to by this court in such circumstances is that, "When an instruction is given which fairly contains the substance of an instruction refused, the refusal of such instruction does not constitute reversible error." Rock Island Coal Min. Co. v. Toleikis, 67 Okla. 299, 171 Pac. 17; Citizens' Bank of Headrick v. Citizens' State Bank of Altus, 75 Okla. 225, 182 Pac. 657; Mangold & Glandt Bank v. Utterback, 70 Oklahoma, 174 Pac. 542; Oil Fields & Santa Fe Ry. Co. v. Treese Cotton Co., 78 Okla. 25, 187 Pac. 201; Kelly v. Hamilton, 78 Okla. 179, 189 Pac. 535; Ellet-Kendall Shoe Co. v. Ross, 28 Okla. 697, 115 Pac. 892; Eisminger v. Beman, 32 Okla. 818, 124 Pac. 104.

Defendant's propositions 4 and 5, discussed in their brief, go to the question of the court's action in sustaining objections to certain testimony. And proposition 7 goes to the question of the court's refusing to exclude from the consideration of the jury remarks of counsel for plaintiffs in his argument of the case to the jury. From examination of the record we are unable to say that this was, if erroneous such prejudicial error as to require reversal of the case, under the rule announced by this court that:

"In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal" McCoy et al. v. Wosika et al., 75 Okla. 3, 180 Pac. 967; Bunker v. Harding et al., 70 Oklahoma, 174 Pac. 749; Blasdel et al. v. Gower, 70 Oklahoma, 173 Pac. 644; Shawnee Nat. Bank v. Pool, 66 Okla. 145, 167 Pac. 994; Chicago R. I. & P. Ry. Co. v. Pruitt, 67 Okla. 219, 170 Pac. 1143.

Proposition 8, discussed by counsel for defendant in their brief, urges that the verdict of the jury was excessive, and the trial court erred in rendering judgment against the defendant for interest. The first part of the proposition, that the verdict of the jury was excessive, is without merit, for the reason that the undisputed testimony was that, immediately following the dipping of the cattle, they began to die; that when the same were dipped they were wild four and five year old Texas steers, and that in driving them into the chute and vat care had to be taken to prevent them from running over and crushing each other; that following the dipping they began to droop and draw and become weak and sick showing symptoms of poisoning, and almost immediately after falling off their feet. And they continued to die after they were delivered to the plaintiff, to the number of 123 head. The undisputed testimony of the plaintiffs was that these cattle were then worth in the market $50 per head, which would amount to $6,150, for the 123 head at that rate; that the remainder of the 690 head, to wit, 567, were damaged to the amount of $15 per head, which would aggregate $8,505, which, added to the value of those that died, would make in the aggregate $14,655.

The jury returned a verdict in favor of the plaintiffs for the sum of $11,820, with interest thereon at six per cent. from May 30, 1916. It is clear that the amount of damages found by the jury, to wit, $11,820, was not excessive as before stated. The amount of damages proven was in excess of that found by the jury; but the plaintiffs' damages were unliquidated and it was necessary for a judgment or verdict to be had in order to ascertain the amount of the same. Then, under section 2848, Rev. Laws 1910 as construed by this court in the cases of City of Chickasha v. Hollinsworth et al., 56 Okla. 341, 155 Pac. 859, and St. Paul Fire & Marine Ins. Co. v. Robinson, 72 Oklahoma, 180 Pac. 702, interest was not allowable and that part of the verdict of the jury and the judg-

ment of the court allowing interest from May 30, 1916, to the time of trial was erroneous, and the judgment should be so modified as to disallow the same.

Concerning the matter of interest, counsel for defendants in error say in their brief in the concluding paragraph: "Should the court hold that plaintiffs were not entitled to recover interest on damages prior to judgment, plaintiffs respectfully ask that the judgment of the court be modified to conform to such finding."

This being the only error which the defendant is, under the law, entitled to have corrected, the judgment of the trial court is, therefore, modified by deducting therefrom interest on the damages allowed from May 30, 1916, to the date of the verdict, which was December 10, 1920, and as so modified, will be affirmed. St. Paul Fire & Marine Ins. Co. v. Robinson, 72 Oklahoma, 180 Pac. 702.

KANE, MILLER, KENNAMER, and NICHOLSON, JJ., concur.